467 A.2d 1307

COMMONWEALTH of Pennsylvania

v.

Thomas SMITH, Appellant.

COMMONWEALTH of Pennsylvania

v.

David GARVIN, Appellant.

COMMONWEALTH of Pennsylvania

v.

James BRADLEY, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 3, 1982.

Filed Oct. 14, 1983.

Reargument Granted in Garvin,
Dec. 16, 1983.

Reargument Denied in Bradley,
Dec. 16, 1983.

Petition for Allowance of Appeal Denied Dec. 19, 1983.

174

James J. Phelan, Jr., Narberth, for Smith, appellant (No. 1229).

George Henry Newman, Philadelphia, for Garvin, appellant (No. 1332).

Bruce M. Rotfeld, Blue Bell, for Bradley, appellant (No. 1465).

Maxine J. Stotland, Assistant District Attorney, Philadelphia, for Com., appellee.

Before SPAETH, ROWLEY and VAN der VOORT, JJ.

ROWLEY, Judge:

Commencing September 4, 1980, appellants were tried jointly before a jury on charges of rape, simple assault, involuntary deviate sexual intercourse and criminal conspiracy. On September 19, 1980, the jury returned a verdict finding Appellant Garvin guilty of the crimes of rape and simple assault and verdicts finding Appellants Smith and Bradley each guilty of rape. Appellants were found not

guilty of the remaining charges. On May 6, 1981, after an evidentiary hearing, appellants' post-verdict motions were argued and denied. Garvin and Bradley were each sentenced to serve a term of five to ten years imprisonment for rape; Garvin was sentenced to an additional term of two years probation on the simple assault conviction to be served consecutively to his sentence for rape. Smith was sentenced to seven and one-half to fifteen years imprisonment on his conviction for rape. The trial court denied oral motions to modify the sentences made on behalf of all three appellants and later denied written motions submitted on behalf of Appellants Garvin and Smith. All three appellants subsequently filed separate appeals to this court. Because they grow out of the same factual situation and present many common issues, the appeals were consolidated for review.

Only a brief statement of the facts need now be set forth; the factual background will be examined in greater detail as need be in connection with each of the assignments of error. Appellants were convicted of gang raping the prosecutrix in an alleyway. The victim had earlier taken a quantity of drugs and imbibed some beer. The combined effect of the drugs and alcohol was to make her perception unclear and her gait unsteady. However, she specifically remembered meeting the three appellants on a street in Philadelphia during the evening of May 5–6, 1980, and she also remembered that each of them had had sexual intercourse with her while she was "[t]rying to fight away." (N.T. 9/8/80, pp. 3.18 and 3.20.)

## I

Combined, appellants raise more than fifty assignments of error. A great many of these issues were ably discussed by the trial judge, the Honorable Levan Gordon, and need not be considered further.[1] Also, several issues have been waived, are frivolous, or are without merit.

1. The issues raised by Appellant *Smith* and properly resolved by Judge Gordon are set forth in appellant's brief as follows:

 Appellant Garvin has waived any claim of error with respect to the court's charge to the jury. In this court, appellant argues that the trial court erred in failing to

 I. Was the verdict contrary to the evidence?

 II. Was the verdict contrary to the weight of the evidence?

 III. Was the verdict contrary to the law?

 IV. Did the court err in denying demurrers to the bills?

 V. Did the court err in failing to grant a severance to the defendant [Smith]?

 * * * * * *

 VII. Did the court err in failing to impose sanctions on the Commonwealth for its failure to complete discovery?

 VIII. Did a juror or jurors see the defendant [Smith] leave the courtroom in handcuffs on the final day of trial?

 IX. Did the court err in failing to remove [a spectator] ... from the courtroom ...?

 X. Did the court err in denying defense counsel an opportunity to develop the complainant's past conduct as to drugs and alcohol?

 XI. Did the court err in denying a motion for a psychiatric examination of the complainant?

 * * * * * *

 XVI. Did the court err in permitting [the complainant's] clothes to be sent to the jury ...?

 XVII. Did the court err in denying petitioner's [Smith's] request for a directed verdict or dismissal of the rape charge since the evidence was insufficient ...?

 XVIII. Was the evidence insufficient to sustain the conviction for rape ...?

 XIX. Did the court err in denying petitioner's [Smith's] request for a directed verdict or dismissal of simple assault [sic] ...?

 XX. Was the evidence insufficient to sustain the conviction for simple assault ...?

The issues raised by Appellant *Garvin* and properly resolved against him are set forth in his brief as follows:

 1. The evidence was insufficient to support convictions of rape and simple assault.

 * * * * * *

 3. The court erred in denying Appellant's [Garvin's] motion for directed verdict [sic] on the third count of Bill of Information No. 54 ... charging Appellant with feloniously engaging in sexual intercourse with another person not his spouse who was unconscious.

 * * * * * *

 7. The court erred in sending out clothing exhibits ....

 8. The court erred in restricting Appellant's [Garvin's] cross-examination of the prosecutrix as to the effect her drug abuse and drug dependency had on her credibility.

The issue raised by Appellant *Bradley* and properly resolved against him is set forth in his brief as follows:

 A. The Trial Court erred when they [sic] refused to grant a new trial on the grounds that the verdict was against the weight of the evidence.

adequately instruct the jury on the subject of "reasonable resolution."[2] The court had been asked by the jurors to assist them by repeating the instructions after they had initially retired to deliberate. However, no objection to this part of the charge was made by appellant's trial counsel. The issue, therefore, has not been preserved for appellate review. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974). Anticipating this result, appellate counsel asserts in this court, for the first time, that trial counsel was ineffective for failing to object to this portion of the trial court's instructions. However, present appellate counsel also represented Garvin at the post-trial stage of these proceedings. He filed supplemental post-trial motions[3] and was present at a post-trial hearing at which he called Garvin's trial counsel to testify regarding her alleged ineffectiveness in other respects. The issue of trial counsel's ineffectiveness *on this point* was not raised at any time before the trial court. Because this issue was not "raised as an issue at the earliest stage in the proceedings at which [trial counsel] no longer represent[ed]" the appellant, this issue is not properly before us. *Commonwealth v. Hubbard*, 472 Pa. 259, 276–277 nn. 6 and 7, 372 A.2d 687, 695 nn. 6 and 7 (1977). For the same reason, Appellant Garvin cannot now attack trial counsel's effectiveness with regard to the jury being permitted to obtain the clothing worn by the victim on the night of the attack for inspection during

2. This is issue "5" raised by Appellant Garvin. Appellant's present counsel did argue to the trial court that it had erred in defining "threat of force" but does not press that argument on appeal. The issue on appeal is stated as being, "The court erred in defining threat of force that would prevent resistance by a person of reasonable resolution in its charge on rape ...." However, in the text of the argument, Appellant complains only that the court's definition of reasonable resolution was in error.

3. Although there is no copy of these motions in the record, the trial court quotes from this document in its opinion. (Tr.Ct.Op. at 18–19.) Present counsel began his representation of Appellant Garvin on March 9, 1981, well before the hearing on post-trial motions.

their deliberations.[4] Nor can appellant, for the first time, attack in this court the trial court's instruction or trial counsel's failure to object to the trial court's instruction that prior inconsistent statements could be used only to impeach credibility and not as substantive evidence.[5] Finally, Appellant Garvin has also waived consideration of the adequacy of the trial court's reasons for his sentence under *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977).[6] The motion to modify sentence filed on appellant's behalf did not raise a *Riggins* issue. Such issue has, therefore, not been preserved for appellate review.

▮▮▮ Furthermore, inasmuch as the trial court correctly determined that it did not abuse its discretion in allowing a "nodding" spectator to remain in the courtroom,[7] we find no merit in Appellant Garvin's suggestion that trial counsel was ineffective for failing to move for a mistrial on this same ground.[8] Counsel cannot be found ineffective for failing to raise a meritless claim. *Commonwealth v. Hubbard*, 472 Pa. at 278, 372 A.2d at 696.

**4.** Having concluded that the trial court properly ruled that it had not erred in allowing the jury to obtain the clothing, *see* n. 1, *supra,* Appellant Smith's issue "XVI", *see also Commonwealth v. Nahodil,* 462 Pa. 301, 341 A.2d 91 (1975), Pa.R.Crim.P. 1114, we cannot but conclude as well that any assertion of ineffectiveness is without merit. Counsel cannot be ineffective for failing to raise a meritless claim. *Commonwealth v. Hubbard,* 472 Pa. at 278, 372 A.2d at 696.

**5.** This is Appellant Garvin's issue "9". Counsel has appended to his summary treatment of this issue a footnote condemning his own role in failing to preserve this issue for appeal. We discuss such tactics in detail, *infra,* at text accompanying notes 26–28. In any event, we note that appellant's argument on this point is without arguable merit. Appellant does not tell us whose prior statements were inconsistent with the testimony given at trial nor what substance he hopes to gain by it. Furthermore, appellant's argument is premised on an incorrect statement of the law. *See Commonwealth v. Waller,* 498 Pa. 33, 39 n. 2, 444 A.2d 653, 656 n. 2 (1982).

**6.** This issue is raised as part of issue "10" in appellant's brief.

**7.** *See* n. 1, *supra,* Appellant Smith's issue "IX".

**8.** Appellant Garvin's issue "6".

Additionally, Appellant Smith claims that the trial court erred in denying his request for a continuance. However, the record reveals no request for a continuance by appellant's counsel; the court could not err in denying a motion never made.[9]

We also do not agree with Appellant Garvin's contention that the sentences for rape and simple assault should merge.[10] It is clear from the testimony (N.T. 9/8/80 at 3.17–3.18) that appellant struck the victim on the face *after* he had raped her. The victim testified that he punched her in the right side of her face only after she had avoided appellant's attempt to force her to engage in an act of oral sex. The two incidents were thus separate and distinct and the jury could properly conclude that Appellant Garvin had committed two criminal acts. The force used in punching the complainant could not have been used to overcome her volition with respect to the rape because that crime had already been completed. *See Commonwealth v. Wojcie-chowski*, 285 Pa.Super. 1, 426 A.2d 674 (1981).

We likewise do not agree with Appellant Garvin or Appellant Smith that their respective sentences are excessive.[11] Appellant Garvin was sentenced to five to ten years imprisonment for rape followed by two years probation for simple assault. Appellant Smith was sentenced to seven and one-half to fifteen years imprisonment for rape. Rape is a felony of the first degree, 18 Pa.C.S.A. § 3121, subjecting each appellant to the possibility of a maximum prison term of twenty years. 18 Pa.C.S.A. § 1103(1). Simple assault is in this case a misdemeanor in the second degree, 18 Pa.C.S.A. § 2701(b), and Appellant Garvin's conviction for this crime permitted the trial court to impose a sentence

9. Appellant Smith's issue "VI".

10. This is another of the issues Appellant Garvin raises at "10" in his brief. Contrary to the argument of the Commonwealth, it was raised before the trial court by means of a written motion to modify sentence.

11. This is the third and last issue raised by Appellant Garvin at "10". It is also Appellant Smith's issue "XXI".

for up to an additional two years. 18 Pa.C.S.A. § 1104(2). Thus, the sentences actually imposed were well within the statutory guidelines. Furthermore, in his motion to modify sentence, Appellant Smith admitted to having been arrested five times for and having pleaded guilty to "Disorderly Conduct, Simple Assault and Burglary."[12] The trial judge specifically relied upon appellant Smith's record in imposing a greater sentence upon him then upon his co-defendants; neither Appellant Garvin nor Appellant Bradley had any prior record. (N.T. 5/6/81 at 128–129.) *See Commonwealth v. Thurmond,* 257 Pa.Super. 464, 390 A.2d 1330 (1978). An examination of the record also reveals that the trial court complied with the guidelines of the Sentencing Code. 42 Pa.C.S.A. §§ 9701 et seq. *See Commonwealth v. Garrison,* 292 Pa.Super. 326, 437 A.2d 407 (1981). Under these circumstances, the sentences imposed were not in any way excessive, let alone manifestly so.[13] We turn next to the two issues argued most strenuously by all three appellants.

## II

In the first of these, appellants claim for a number of reasons that the closing argument to the jury by the Assistant District Attorney, Ms. Wendy Fleishman, Esquire, was improper.[14] After a thorough review of the record, we disagree.

**12.** Appellant's characterization of these offenses as "minor" is disingenuous, particularly with respect to the conviction for burglary, a felony of the first degree. *See* 18 Pa.C.S.A. § 3502.

**13.** Appellant Garvin's argument is based upon the large number of persons who testified to his good character and community ties, as well as the intoxication of all parties on the night of the rape. The court in *Commonwealth v. Garrison, supra,* rejected a highly analogous argument. We likewise cannot conclude that appellant's sentence *must* be made shorter.

**14.** Appellant Smith's issues "XII", "XIV" and "XV"; Appellant Garvin's issue "4"; and Appellant Bradley's issue "D". Both Appellant Bradley and Appellant Garvin raise claims of ineffectiveness with respect to the purported misconduct discussed in the text, *infra.* Inasmuch as we find no prosecutorial error, the effectiveness arguments of both

■ It is by now beyond cavil that the prosecuting attorney must conduct herself in such a manner as to aid rather than inhibit the truth finding function of the jury. In *Commonwealth v. Barren,* 273 Pa.Super. 492, 499–500, 417 A.2d 1156, 1159–1160 (1979), this court summarized the specific guidelines underlying this principle.

> During closing argument the prosecutor may refer to all facts properly in evidence and may argue all reasonable inferences from such evidence. *Commonwealth v. Graham,* 467 Pa. 417, 358 A.2d 56 (1976). However, it is improper to argue facts not proved or to misstate the evidence. *Commonwealth v. Toney,* 474 Pa. 243, 378 A.2d 310 (1977); *Commonwealth v. Patterson,* 247 Pa. Super. 527, 372 A.2d 1214 (1977): Sections 5.8(a) and 5.9 of the ABA Project on Standards for Criminal Justice Relating to the Prosecution Function. This is peculiarly so where facts not of record are used to inflame the passions or prejudices of the jury. *Commonwealth v. Patterson, supra.* Moreover, there is no longer any room for doubt that it is improper for a prosecutor to express his personal belief as to the credibility of either prosecution or defense witnesses. *Commonwealth v. Kuebler,* 484 Pa. 358, 399 A.2d 116 (1979); *Commonwealth v. Pfaff,* 477 Pa. 461, 384 A.2d 1179 (1978); *Commonwealth v. Bullock,* 266 Pa.Super. 526, 405 A.2d 943

appellants are without merit. *Commonwealth v. Hubbard, supra.* Inasmuch as Garvin's present counsel also represented him at the post-trial stage, present counsel's failure to raise as error and present testimony on the following remarks renders the claim of ineffectiveness as to them waived, *Commonwealth v. Hubbard,* 472 Pa. at 276–277 n. 6, 372 A.2d at 695 n. 6:

1. "But you would take advantage of her. Isn't she the perfect victim ...." (N.T. 9/17/80 at 460.)
2. "That's what he tells you. That's what he wants you to believe ...." (N.T. 9/17/80 at 466.)
3. "You have to live with your own consciences, ladies and gentlemen...." (N.T. 9/17/80 at 468.)
4. "You have been questioned. You had to go through the questioning in the beginning. You know it's an uncomfortable experience. She told you intimate details about her background, about her family, about what happened to her that night. Why would she come forward and tell you those facts?" (N.T. 9/17/80 at 476.)

(1979); *Commonwealth v. Gilmore*, 245 Pa.Super. 27, 369 A.2d 276 (1976); ABA Standards Relating to the Prosecution Function, § 5.8(b). "In determining whether the established bounds of propriety have been exceeded in closing argument, we must ever be mindful of the 'possibility that the jury will give special weight to the prosecutor's arguments, not only because of the prestige associated with his office, but also because of the fact-finding facilities presumably available to him.'" *Commonwealth v. Van Cliff,* 483 Pa. 576, 583, 397 A.2d 1173, 1177 (1979).

But not all flexibility is circumscribed, however. As this court stated in *Commonwealth v. Youngkin*, 285 Pa.Super. 417, 430, 427 A.2d 1356, 1362 (1981):

> [N]ot every intemperate or uncalled for remark by the prosecutor requires a new trial. Rather, the language must be such that its unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility towards the defendant, so that they could not weigh the evidence and render a true verdict. Moreover, the effect of such remarks is largely dependent upon the atmosphere at trial, and the proper action to be taken, upon objection, is within the discretion of the trial court. [But] when the cumulative effect of any improper remarks so prejudices the jury as to prevent a fair trial, reversible error exists. (Citations omitted.)

We apply these standards to the allegedly improper remarks of the Assistant District Attorney.

 Appellant Smith's first assigned error is the Assistant District Attorney's statement during her closing remarks that:

> They didn't bring in a snow machine for that snow. So, ladies and gentlemen, the defense is telling you there is guesswork here, magic hallucinations.
> This coat is covered with blood.
> (N.T. 9/17/80 at 463.)

The first sentence quoted by counsel for Appellant Smith is completely out of context. Ms. Fleishman had been describ-

ing for the jury the meaning and use of circumstantial evidence. In full she stated:

[Defense c]ounsel is asking you to guess. He said to you this is all guesswork. I submit to you it's not guesswork. We are not asking you to guess about one thing in this case. If you were in the Northeast, or in South Philadelphia, or in West Oak Lane and you woke up in the morning—the night before you went to sleep it's cold out, December, it's clear, beautiful night when you go to sleep. You wake up at 9:00 a.m. the next morning and it's sunny, but you go out and you open your door and you find snow on the ground. Now, that's circumstantial evidence that it snowed. You didn't see it snow. Nobody saw it snowing. You didn't see it coming down, but you know it snowed. Now, it's not Hollywood. They didn't bring in a snow machine for the snow. So, ladies and gentlemen, the defense is telling you there is guesswork here, magic, hallucinations.

This coat is covered with blood.

(*Id.*)

The prosecutor's statement, taken in context, is a part of an appropriate response and rebuttal to the argument made on behalf of appellants. Thus, the claim that it exceeded the bounds of proper argument is without merit.

 Counsel also attacks the accuracy of the statement concerning the coat being "covered" with blood. It is undisputed that the coat did have some blood on it, but the quantity of blood was only a "spot" of blood. It is also undisputed that the coat was displayed to the jury at the time the remark was made and the jury was later permitted to have the coat in the jury room for examination during their deliberations. Thus, while the Assistant District Attorney's statement was an exaggeration, it was not prejudicial because the jury was contemporaneously afforded an opportunity and the means to make its own evaluation and draw its own conclusion. (*See* Tr.Ct.Op. at 20.) Furthermore, the only rationale offered by counsel to support an objection to this statement was that the prosecuting attor-

ney had been using the coat as "a prop" during her summation.[15] Because the coat was properly admitted into evidence, there could be no error in allowing the jury to see it.

Next, Appellant Smith contends that the prosecutor misstated the evidence when she said:

> She [the victim] said, "I was bleeding." She said, "I had a gash in my vagina." The doctor came in. Dr. Harper [Hopper] examined her at Jefferson Hospital and he said she had a rip to her labia two to three centimeters. (N.T. 9/17/80 at 464.)

Contrary to appellant's assertion, all of Ms. Fleishman's remarks correctly reflect the testimony of the witness. The complainant was asked on cross-examination to describe her injuries to the jury. She testified as follows:

> I had scrapes and bruises on my face. I had bite marks on my chest and my stomach. *I had a small gash on my vagina.* I had scrapes and bruises and cuts on my legs. I had cuts on my knuckles, and I had a split chin. (N.T. 9/8/80 at 3.105.) (Emphasis supplied.)

Furthermore, Dr. Bruce D. Hopper of the Obstetrics and Gynecology Department of Thomas Jefferson University Hospital testified that he had examined the victim shortly after the incident and found that she had sustained several injuries. He described one such injury as "a two-by-three or two-to-three centimeter, linear abrasion, which was outside or away from the midline of the left labia . . . ." (N.T. 9/10/80 at 5.64.) He further defined an abrasion as "a tear. It's not straight—like a surgical cut. It can be any type of jagged opening." Describing an abrasion as "a rip" during summation is not error in this case because such characterization is fully supported by the testimony.

Appellant Smith also contends that the Assistant District Attorney misstated the evidence when she argued to the jury that the complainant could not have removed the

---

**15.** This rationale was provided by Appellant Garvin's trial counsel and joined in by Appellant Smith's counsel. At no time has any other argument been advanced to support a claim of error with regard to this particular portion of the Assistant District Attorney's summation.

straps from her overalls because she was intoxicated, on the ground and her coat was still on. (N.T. 9/17/80 at 465–466.) In making this argument, the prosecuting attorney was attempting to point out for the jury what she believed to be internal contradictions in the "consent" defense put forth by Appellant Garvin. This argument was permissible because it is based on reasonable inferences from the testimony. Appellant Garvin had testified that he and the victim had been "sort of stumbling" down the street (N.T. 9/16/80 at 303) and that the victim had fallen three times. (*Id.* at 302.) Several other witnesses had also testified that the victim had been noticeably irregular in her speech and gait. Furthermore, Appellant Garvin testified that the victim "didn't take it [her coat] off at all." (*Id.* at 320.) The jury also had heard from the victim that she had been wearing overalls with shoulder straps that had snaps near her shoulders. (N.T. 9/8/80 at 3.17.) She also stated that Appellant Garvin had unzippered her jacket or coat and had started to undo those snaps. (*Id.*) The Assistant District Attorney's summation on this point was permissible because she merely observed to the jury that, in her condition, the victim would have needed help to get the overall straps off or she would have had to take her coat off and that Appellant Garvin did not say that he helped her but that he had testified that she kept her coat on at all times. Thus, the prosecuting attorney merely pointed out for the jury some potentially troublesome aspects of the testimony and asked them to reason to a logical conclusion from what they had heard. We find no error in this regard.

 Appellant Smith further objects to the prosecutor's rhetorical question, "How did she [the victim] roll herself along the ground dragging herself so that she ripped her labia?" The only grounds offered by appellants, in chambers, to support this objection was that the characterizations of "rolling around on the ground" and "a rip" to the victim's labia were improper. (N.T. 9/17/80 at 484–485.) As discussed above, the designation of the wound as a rip fully comports with the evidence. Also, several witnesses

did testify that the victim fell. Furthermore, in their clos-
ing arguments, the attorneys representing the appellants.
each repeatedly referred to the complainant's intoxicated
and drugged condition. (*Id.* at 381, 382, 393, 419, 432,
449–450, *e.g.*) Each attorney also discussed the source of
the victim's injuries. Counsel for Appellant Bradley stated:

> I submit that there is no evidence presented to you how
> she got these injuries.... All you have is speculation[.
> *S*]*he either got them crawling around on the ground,*
> she got them as a result of somebody injuring her ....

(*Id.* at 394.) (Emphasis supplied.)

Counsel for Appellant Smith stated:

> The doctor [Dr. Hopper] did indicate that although there
> were abrasions and contusions of the [victim's] body, that
> these abrasions and contusions were consistent with
> someone falling down on several occasions and someone
> *crawling around on the ground,* also.

(*Id.* at 424–425.) (Emphasis supplied.)

Counsel for Appellant Garvin stated:

> Dr. Ulin testified that her injuries were consistent with
> somebody who had been rolled or who had been dragged,
> but he also testified that her injuries were consistent with
> somebody who had fallen a number of times or *had
> dragged herself across a [rough] surface.*

(*Id.* at 448.) (Emphasis supplied.)

Given these arguments by defense counsel and the testimo-
ny as summarized, the Assistant District Attorney's rhetori-
cal question was a fair response and not error. *Common-
wealth v. Parente*, 294 Pa.Super. 446, 453, 440 A.2d 549,
553 (1982).

 Appellant Smith also claims that the prosecutor
committed reversible error by asking, "Why would [the
victim] come to court and tell each of you that Thomas
Smith forced his penis into her vagina?" (N.T. 9/17/80 at
470.) This question was both a fair recitation of the testi-
mony (N.T. 9/8/80 at 3.18–3.20) and a fair way to respond
to the argument of each defense counsel that the victim

could not be believed because of the combined effects of the drugs and alcohol which caused "blackouts" or "blankouts" in her memory. (*See* N.T. 9/17/80 at 381–398, 404–407, 409–414 [for Appellant Bradley], 418–419, 421–424, 426–428 [for Appellant Smith], 433–444, 446, 449, 451–454, 457–458 [for Appellant Garvin].) Indeed, the main strategy of the defense was to show that the complainant was not a credible witness. The Commonwealth may permissibly defend against attacks on the credibility of its witnesses by bringing to the jury's attention factors from which the jury may draw inferences adverse to those sought by the defense. At no time did the prosecuting attorney announce her personal belief that the victim had been telling the truth or that the appellants had lied.[16] She merely raised for the jury's consideration the painful nature of the complainant's testimony and allowed them to reach their own conclusion as to whether the nature of the testimony did or did not, at least in part, tend to corroborate the truthfulness of her statements on the stand.

██ Next, Appellant Smith asserts that the Assistant District Attorney erred when she summarized the victim's testimony as follows:

[The complainant told you:] "I know what happened. I know each and every one of them forced sex on me." (N.T. 9/17/80 at 471.)

This was a fair condensation of the complainant's testimony.

A. [Complainant] I remember Dave Garvin being on top of me.

Q. [Assistant District Attorney] While he had his body on top of you, what, if anything, happened?

A. He put his penis in my vagina. Then, somehow he got off—and I don't know in which sequence it was—Jim Bradley or Tom Smith got on top of me next . . . .

---

**16.** Thus, cases such as *Commonwealth v. Pfaff,* 477 Pa. 461, 384 A.2d 1179 (1978) and *Commonwealth v. Barren,* 273 Pa.Super. 492, 417 A.2d 1156 (1979) are inapposite.

Q. ... [Y]ou said that Tom Smith and James Bradley were on top of you?

A. Yes.

Q. Would you please tell His Honor and the members of the jury what, if anything, they did while they were on top of you?

A. I don't know in which sequence, but they both stuck their penis [sic] in my vagina.

Q. What were you doing during that time?

A. Trying to fight away.

(N.T. 9/8/80 at 3.18, 3.20.)

The complainant never altered this crucial part of her testimony although it was tested thoroughly on cross-examination. This testimony supports the prosecutor's characterization; therefore it was not prosecutorial misconduct. *Commonwealth v. Parente, supra; Commonwealth v. Ferguson*, 270 Pa.Super. 184, 188, 411 A.2d 241, 243 (1979).

Additionally, Appellant Smith claims that the prosecuting attorney improperly conducted herself during her closing argument in that she was screaming at the jury.[17] In response to this claim, the trial judge stated in chambers that:

The Court found there was no prosecutorial misconduct. I don't think the District Attorney was talking in an extra loud [sic] tone of voice. She did have a tendency to modulate her voice up and down. At that particular time I don't think there was anything unusual about the way she was talking to the jury ....

Miss Fleishman gets emotional during closing arguments but we don't find that her tone of voice was anymore [sic] inflammatory than any of the other speakers that addressed the jury.

(N.T. 9/17/80 at 492, 497.)

**17.** Counsel for Appellant Smith states in his brief, at 36:
The trial court agreed that the District Attorney got emotional during her closing argument.

On the record before us, we cannot and will not overrule the finding of the trial court on this issue.

Finally,[18] Appellant Smith alleges that the Assistant District Attorney exceeded the bounds of propriety by telling the jury, "Don't be fooled by the smokescreen defense, —[objections by defense counsel]—this hallucination defense.... Look at all the evidence. Don't be fooled. [Objections of counsel.]" (N.T. 9/17/80 at 476, 477.) To support this argument, counsel for Appellant Smith cites five cases: *Commonwealth v. Gilman,* 470 Pa. 179, 368 A.2d 253 (1977); *Commonwealth v. Collins,* 462 Pa. 495, 341 A.2d 492 (1975); *Commonwealth v. Harvell,* 458 Pa. 406, 327 A.2d 27 (1974); *Commonwealth v. Hamilton,* 274 Pa.Super. 350, 418 A.2d 442 (1980); and *Commonwealth v. Long,* 258 Pa.Super. 312, 392 A.2d 810 (1978). However, we find those cases distinguishable from that presently before us because the errors of the prosecutor in each of those cases were far more egregious than that alleged here.

In *Gilman,* the prosecutor had stated that the defendant's admission that he had committed voluntary manslaughter was only an attempt to "becloud the issue"; that it was "smart" and "shrewd" to do so, but that he hoped that "you people [the jury] are not deceived by such trial tactics." Furthermore, the prosecutor attacked the defendant personally as "cunning ... sly, ... calculating ... deceiving ... [and] a cold-blooded killer." He also attacked the defense strategy as "incredible" and made a lengthy plea directed to the jury's emotions. 470 Pa. at 184–185, 368 A.2d at 255–256.

**18.** Counsel for Appellant Smith also argues that the Assistant District Attorney erred when she stated that (1) "petitioner's defense was that [the complainant] had hallucinated her injuries"; (2) "the prosecutor ... misstated the defendant's character evidence"; and (3) "the three (3) defendants had raped [the victim] ...." Because no objections were made to these statements at trial by counsel for appellant Smith, these claims have been waived. *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974). Furthermore, Appellant Smith never presented any character evidence at trial; the prosecutor could not therefore misstate same. Finally, we note that, had the claim been preserved with respect to the final statement, the claim would have no merit. *See* text accompanying n. 21 ff.

In *Collins,* the Pennsylvania Supreme Court also cited a great many prosecutorial improprieties. 462 Pa. at 499–500, 341 A.2d at 493–494. Among them was a reference to a "smoke screen" erected by defense counsel who were attempting "to throw mud in the eyes of the jurors." *Id.,* 462 Pa. at 500, 341 A.2d at 494.

In *Harvell,* the prosecutor's improprieties included a plea that the members of the jury not "be fooled." There followed a long harangue appealing to the jury's passions and prejudices regarding the fear of crime in the community. The prosecutor stated that the members of the jury could free the defendant if they wished, but warned them, "[I]t might be one of you next time. It might be one of you." He also stated that persons like the defendant did not "need to walk the streets." The prosecutor also provided the jury with a long discussion of what the victim would have said had the victim been able to testify. 458 Pa. at 408–409, 327 A.2d at 29.

In *Hamilton,* this court was presented with a similar "best witness"-type of summation which incidentally included a reference to the defendant fooling the jury or "pull[ing] the wool over your [the jury's] eyes." 274 Pa.Super. at 352–353, 418 A.2d at 29–30.

In *Long,* this court condemned disparaging remarks by a prosecutor which included an exhortation not to permit the defendant to "sneak out of this courtroom under the cover of smoke." The prosecutor in that case also referred to defense counsel as a "not guilty machine" while informing the jury that the prosecution was required to search for "the truth." Additionally, the prosecutor expressed his personal opinion of doubt as to whether an impeachment witness had told the truth while on the stand and he played on the jury's fear of the rising crime rate in their city. 258 Pa.Super. at 318, 392 A.2d at 813.

The case before us is entirely different. As we have discussed at some length, the Assistant District Attorney in this case committed no error resulting in prejudice to

any of the appellants. Furthermore, much of the defense theory in this case revolved around the complainant's memory loss. In their summations, defense counsel emphasized the combined effect of the pills and the alcohol ingested by the victim. Each attorney argued at some length that the complainant admitted that she had had memory lapses concerning March 5 and 6, 1980, and that, according to expert medical testimony produced at trial, complainant could have suffered from "hallucinations" and "illusions" as a result of the drugs and alcohol. (*See, e.g.,* N.T. 9/17/80 at 404–407 [summation for Appellant Garvin].) Additionally, the tenor of the Assistant District Attorney's entire closing leaves no doubt that she encouraged the jury to decide the case on all of the evidence presented during the long trial. She stated that:

> There was a lot of testimony presented. I want you to hesitate. I want you to think about this case .... It is your decision whether they really raped her or whether she hallucinated that rape .... Each and every one of you has to [sic] listen to all of the facts and think about all of them....

(N.T. 4/17/80 at 468, 469.)

She repeatedly told the members of the jury that they would be required to resolve questions for themselves on the basis of all the testimony they had heard. (*See, e.g., id.* at 471, 474, 475, 477.) In *Commonwealth v. Basile,* 312 Pa.Super. 206, 219, 458 A.2d 587, 593 (1983), a panel of this court observed that "no *per se* rule has been adopted with respect to such alleged improper remarks." (Original emphasis.) We agree. In this case, "[t]he remarks *by themselves* were not of such a character as to inflame the passion and prejudices of the jury, nor were they capable of seriously misleading or distracting the jury." *Id.,* 312 Pa. Superior Ct. at 219, 458 A.2d at 593 (original emphasis). Furthermore, because these remarks were coupled with the apt characterization of the defense as an "hallucination defense" as well as with the constant reminder to logically

evaluate the evidence before them, we find no error in this case.

> The prosecutor was merely telling the jury to avoid this "smokescreen" and evaluate the testimony logically, and not to let the defense counsel divert their attention from the real issue.[19]
>
> *Commonwealth v. Middleton,* 269 Pa.Super. 17, 23, 409 A.2d 41, 44 (1979).

None of Appellant Smith's allegations of prosecutorial misconduct has merit.[20]

Appellant Garvin likewise makes numerous challenges to the prosecutor's conduct during her summation. Many of

**19.** Appellant Smith attempts to distinguish *Middleton* from *Collins, Gilman, Long* and *Hamilton* because (1) "it [*Middleton*] is only a panel opinion"; (2) *Collins* and *Gilman* are Supreme Court decisions which have not been overruled; (3) *Hamilton* came after *Middleton;* and (4) five judges of this court participated in *Long.* As discussed in the text, we believe that all of these other cases are factually distinguishable. The fact that *Hamilton* came after *Middleton* is irrelevant. Furthermore, the fact that five judges of the Superior Court decided *Long* but that only three judges participated in *Middleton* is of no consequence. This court began to hear cases in three-judge panels in the late-Summer of 1978. Furthermore, because three judges of this court presently constitute a quorum, they may by majority action decide cases and issue opinions which are then entitled to full precedential weight and effect. *See Commonwealth v. Roach,* 307 Pa.Super. 506, 512–515, 453 A.2d 1001, 1004–1006 (1982). *Long* was argued before this court began to sit in panels of three judges. Therefore, the number of judges sitting in *Long* gives that decision no added authority.

**20.** In a similar argument, Appellant Garvin cites us to *Commonwealth v. Raffensberger,* 291 Pa.Super. 193, 435 A.2d 864 (1981). The remark there condemned was, "[T]he defense *counsel,* I believe, *is trying to make a fool out of this jury." Id.,* 291 Pa.Superior Ct. at 205, 435 A.2d at 870 (original emphasis). This court condemned that remark as deflecting the inquiry from whether guilt was proven beyond a reasonable doubt to whether or not the jury was appearing in a foolish light. Furthermore, this remark occurred in a summation in which the prosecutor blatantly attacked defense strategy, repeatedly expressed his personal opinion and constituted a "continual stream of personal anecdotes." *Id.,* 291 Pa.Superior Ct. at 204–205, 435 A.2d at 869. In the case before us, however, the summation taken as a whole and with the contested remark in context constitutes an appeal to the jury to use its collective intelligence and logic in assessing all of the evidence.

these alleged errors were discussed and resolved against Appellant Smith and will not be discussed separately. Rather, we will discuss only the alleged error not already considered.[21]

■ Appellant Garvin complains that the Assistant District Attorney improperly asserted her opinion that he was guilty when she stated twice that, "Three men raped [the complainant]." (N.T. 9/17/80 at 468.) While we consider that this remark was better left unsaid, reading the summation as a whole we do not conclude that it was of such a nature as to "prejudice the jury, forming in their minds fixed bias and hostility toward the defendant[s], so that they could not weigh the evidence and render a true verdict." *Commonwealth v. Youngkin, supra.* The remark took place within the following context:

I want you to hesitate in this case. [The victim] was on that stand for a day and a quarter. There was a lot of testimony presented. I want you to hesitate. I want you to think about this case. You have to live with your own consciences ladies and gentlemen. You have to decide this case. Three men raped [the victim]. [Objection of counsel.] Three men raped [the victim] on March 5th. [Objection.] It is your decision whether they really raped her or whether she hallucinated that rape. You have to decide.

(N.T. 9/17/80 at 468.)

While the insertion of the words, "There was testimony that ..." before the objectionable sentence would have purified it entirely, we are not prepared to say that the absence of those four words requires a new trial. The context in which the statement was made makes it clear that the prosecuting attorney was not only urging the jury to draw its own conclusions, but she was also making it clear to the jury that it had the duty to decide the case in light of the evidence and not in accordance with her expressions.

**21.** As we noted earlier, counsel for Appellant Garvin has raised other assignments of error but they have been waived. *See* n. 14, *supra.*

"[A] district attorney must have reasonable latitude in fairly presenting a case to the jury and that he or she *must* be free to present his or her arguments with logical force and vigor.... [T]he district attorney's remarks must be evaluated in the context in which they occur. *Commonwealth v. Smith,* 490 Pa. 380, 387–388, 416 A.2d 986, 989 (1980) (original emphasis, citation omitted.)

Furthermore, we have upheld language far more caustic and emotional than that in the case at bar. *Commonwealth v. Parente,* 294 Pa.Super. at 454, 440 A.2d at 553; *Commonwealth v. Middleton,* 269 Pa.Super. at 23, 409 A.2d at 44. Finally, we note that the trial judge issued curative instructions immediately after the prosecutor's summation (N.T. 9/17/80 at 499) and again the next day as to the jury's role as the finder of facts. (N.T. 9/18/80 at 3–22 *passim.*) Under these circumstances, we find no reversible error.

The remarks alleged by Appellant Bradley to have constituted error have all been considered in connection with the arguments of Appellant Smith and Appellant Garvin. Those assignments of error were rejected as lacking in merit. Thus, Appellant Bradley's claim that his trial counsel was ineffective for failing to object to some of these same remarks must be rejected as well. Counsel cannot be found ineffective for failure to raise a meritless claim. *Commonwealth v. Hubbard,* 472 Pa. at 278, 372 A.2d at 696.

III: *Ineffectiveness of Trial Counsel: Jury Selection*

The second major issue presented for our review comes to us in three different forms. Counsel for both Appellant Bradley and Appellant Smith claim that trial "counsel was ineffective by not requesting additional peremptory challenges prior to or during jury selection." [22] Counsel for Appellant Garvin attacks trial counsel's effectiveness on the grounds that she failed to request "and use" additional peremptory challenges. While this general claim is the

22. Brief for Appellant Bradley at 19. Appellant Smith phrases the issue in a slightly different manner but without a change in substance.

same for each appellant, the theories underlying the claim are slightly different in each case as is the procedural posture of each claim. We must, therefore, treat each claim separately.

## A. Appellant Bradley

Appellant Bradley argues that counsel's ineffectiveness stemmed from his unawareness of the most recent amendments to Pa.R.Crim.P. 1126 which went into effect on August 1, 1980, one month before trial. As a result, defense counsel believed that the defense was to be given a total of only seven peremptory challenges which were to be divided among all three defendants. Appellant Bradley now asserts that Rule 1126, as it stood at the time of trial, permitted each appellant a total of seven peremptory challenges. Although not raised by Bradley at trial or in post-trial motions, this claim is not waived. Present counsel for Appellant Bradley assumed responsibility over this case only after this appeal had been perfected. *Commonwealth v. Hubbard*, 472 Pa. at 276–277 nn. 6 and 7, 372 A.2d at 695 nn. 6 and 7. We note that there has been no evidentiary hearing for Bradley on this issue in the trial court. *Cf. Commonwealth v. Davis*, 499 Pa. 282, 453 A.2d 309, 310 (1982); *Commonwealth v. Stitzel*, 309 Pa.Super. 43, 454 A.2d 1072 (1982). However, because we can determine that appellant's claim is without merit, we will not remand for such a hearing. *Commonwealth v. Hubbard, supra,* 472 Pa. at 278, 372 A.2d at 696.

We do not agree with appellant's reading of Rule 1126. The Rule, as amended, states that, where there is only one defendant in a case involving a non-capital felony (such as rape), "the Commonwealth and the defendant shall each be entitled to seven (7) peremptory challenges." Rule 1126(a)(2). In trials involving more than one defendant, "the defendants shall divide equally among them that number of peremptory challenges that the defendant charged with the highest grade of offense would have received if tried separately." Rule 1126(b)(1). Each defendant, how-

ever, must be afforded "at least two peremptory challenges" and, if the "division among joint defendants results in a fraction of a peremptory challenge, each defendant shall be entitled to the next highest number of such challenges." *Id.*

In this case, the division of challenges resulted in two and one-third (2⅓) challenges for each appellant. Thus, under the amended Rule each appellant was entitled to the next highest whole number of such challenges, namely, three peremptory challenges. The appellants were entitled to a maximum of seven peremptory challenges each *if, but only if,* permitted by the trial judge. Rule 1126(b)(2) provides that:

> [I]t shall be within the discretion of the trial judge to increase the number of peremptory challenges to which each defendant is entitled up to the number of peremptory challenges that each defendant would have received if tried alone.

There is no automatic entitlement to seven peremptory challenges for each defendant when multiple defendants are tried jointly for a non-capital felony. Furthermore, Appellant Bradley has failed to set forth any circumstances which would have warranted, let alone required, the trial judge to grant the maximum number of peremptory challenges for use during voir dire in this case. *Commonwealth v. McKenna,* 498 Pa. 416, 446 A.2d 1274 (1982); *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. McFarland,* 304 Pa.Super. 470, 450 A.2d 1008 (1982). The claim pressed here by Appellant Bradley is therefore without merit.

### B. Appellant Smith

Counsel for Appellant Smith, on the other hand, attacks his *own* conduct at trial as constituting ineffective assistance of counsel in that he failed to obtain for appellant's use either the minimum number of three peremptory challenges or any greater number of such challenges up to the maximum number of seven. Counsel is the only attorney to

have represented Appellant Smith during this case. As with Appellant Bradley, no evidentiary hearing on this issue was requested or held for Smith in the trial court. Instead, counsel attempts to turn this appeal into an evidentiary presentation. In his brief, counsel *"avers* that he was not aware of rule 1126 prior to or during jury selection and that if he had been ... he would have requested the maximum number of challenges." Counsel further states that he had "no legitimate tactical reason for [his] failure to request additional challenges; rather his failure to do so was the result of his ignorance of Rule 1126." Brief for Appellant Smith at 33–34. (Emphasis supplied.)

This court is thus once again confronted with a situation in which counsel raises his own ineffectiveness. Over the last decade, and especially over the last five years, such claims have become an all too frequently encountered feature of the appellate review of criminal cases. Over this period, more than forty cases involving such claims have been presented.[23] The standard pattern of analysis and disposition was established in *Commonwealth v. Fox,* 476 Pa. 475, 383 A.2d 199 (1978). The court stated:

> While this court will entertain a claim of ineffective assistance of counsel on appeal by the same attorney who served as trial counsel if reversible error is apparent on the record before us, we will not reject such a claim without a remand for appointment of new counsel.

*Id.,* 476 Pa. at 479, 383 A.2d at 201.[24]

Thus, it is the usual course for an appellate court of this Commonwealth to remand a claim such as this to the trial court for a hearing on counsel's alleged ineffectiveness at which the defendant will be represented by an attorney not associated with the firm or office which provided the earli-

---

**23.** We include in that number, cases in which one associate in a law firm or public defender's office raises the ineffectiveness of another member of the same firm or office.

**24.** The court also noted that it is proper for the Court to raise the question *sua sponte.* Id., 476 Pa. at 479 n. 4, 383 A.2d at 201 n. 4.

er, allegedly ineffective, counsel.[25] Only five times have our appellate courts found an attorney's alleged ineffectiveness to be apparent on the record and decided the merits of an ineffectiveness claim raised by the allegedly ineffective attorney or someone associated with him. *Commonwealth v. Pfaff*, 477 Pa. 461, 384 A.2d 1179 (1978); *Commonwealth v. Tran*, 307 Pa.Super. 489, 453 A.2d 993 (1982) (filed 12/10/82); *Commonwealth v. Stiefel*, 286 Pa.Super. 259, 428 A.2d 981 (1981); *Commonwealth v. McNeal*, 261 Pa.Super. 332, 396 A.2d 424 (1978) (three judges concurring only in the result, one judge dissenting); *Commonwealth v. Weber*, 256 Pa.Super. 249, 389 A.2d 1107 (1978). In almost all other cases, the matter was remanded for further proceedings.

Usually, when any discussion takes place concerning the principles underlying the disposition of such a claim, the courts often state that a remand is necessary because it is "unrealistic" to expect zealous advocacy from an attorney laboring under the conflict of interest inherent in arguing his own or an associate's ineffectiveness. *Commonwealth v. Fox*, 476 Pa. at 478–479, 383 A.2d at 200–201. Sometimes in the strongest terms, both this court and the Supreme Court have used this zealousness theme to condemn the practice and to induce counsel to either forego such claims or to step aside and allow new counsel to adequately develop a record and present the claim along with the others preserved for appellate review. *Commonwealth v. Willis*, 492 Pa. 310, 424 A.2d 876 (1981); *Commonwealth v. Glasco*, 481 Pa. 490, 393 A.2d 11 (1978); *Commonwealth v. Gardner*, 480 Pa. 7, 389 A.2d 58 (1978); *Commonwealth v. Patrick*, 477 Pa. 284, 383 A.2d 935 (1978); *Commonwealth v. Wright*, 473 Pa. 395, 374 A.2d 1272 (1977); *Commonwealth v. Via*, 455 Pa. 373, 316 A.2d 895 (1974); *Commonwealth v. Massie*, 294 Pa.Super. 115, 439 A.2d 777 (1982);

**25.** The better course is for counsel to remove himself and permit different counsel to develop a record on the ineffectiveness issue before the case is removed from the trial court's jurisdiction by virtue of the filing of a notice of appeal. *See Commonwealth v. Beecher,* 278 Pa.Super. 309, 420 A.2d 555 (1980).

*Commonwealth v. Nance,* 290 Pa.Super. 312, 434 A.2d 769 (1981); *Commonwealth v. Beecher,* 278 Pa.Super. 309, 420 A.2d 555 (1980); *Commonwealth v. Lewis,* 278 Pa.Super. 35, 419 A.2d 1342 (1980); *Commonwealth v. Prowell,* 249 Pa.Super. 435, 378 A.2d 374 (1977); *Commonwealth v. Crowther,* 241 Pa.Super. 446, 361 A.2d 861 (1976).. Occasionally, this court has forcefully criticized counsel for raising such claims. For example, in *Commonwealth v. Smoyer,* 281 Pa.Super. 320, 323, 422 A.2d 189, 190 (1980), the Court stated:

> We do not condone the practice of counsel from the public defender's office raising the effective assistance of counsel where trial counsel is a different attorney from the same public defender's office. If a genuine issue of the effectiveness of trial counsel exists, then the public defender should request the trial court to appoint appellate counsel who is not a member of the public defender's office. The allegation of ineffective assistance of counsel is tantamount to an allegation of incompetency on the part of counsel .... The best interest of an appellant is not served where his counsel must establish that an associate from his office acted in an incompetent manner at trial.

It is now beyond dispute that the duties and obligations imposed upon counsel in a criminal case are the same regardless of whether counsel is privately retained, appointed by the court or a member of the public defender's or legal aid office. *Cuyler v. Sullivan,* 446 U.S. 335, 344–345, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980); *Ferri v. Ackerman,* 444 U.S. 193, 199–205, 100 S.Ct. 402, 407–410, 62 L.Ed.2d 355 (1979); *Reese v. Danforth,* 486 Pa. 479, 406 A.2d 735 (1979); *Barto v. Felix,* 250 Pa.Super. 262, 378 A.2d 927 (1977); ABA Standards for Criminal Justice (2d Ed.), Standards Relating to the Defense Function, Standard 4–3.-9; Burger, *Counsel for the Prosecution and Defense— Their Roles Under the Minimum Standards,* 8 Am.Crim. L.Q. 2, 6 (1969). The burden placed upon the shoulders of the public defender by the Court in *Smoyer, supra,* must be

borne as well by privately retained and court-appointed counsel. It is manifestly obvious that present counsel has not done so.

�the circumstances of this case also call upon us to comment upon another facet of counsel's representation. As is apparent from the quoted portions of his brief, counsel is attempting to place before us factual matters outside the record in an attempt to obtain a ruling in his client's favor. Not only is it not the function of this court to make factual findings, but counsel is attempting to act as both witness and attorney in the same case. Such a practice has long been condemned in both civil and criminal cases. *Commonwealth v. Floyd*, 494 Pa. 537, 431 A.2d 984 (1981); *Commonwealth v. Fontana*, 490 Pa. 7, 415 A.2d 4 (1980); *American Dredging Co. v. City of Philadelphia*, 480 Pa. 177, 389 A.2d 568 (1978); *Kraynick v. Hertz*, 443 Pa. 105, 277 A.2d 144 (1971); *Commonwealth v. Scoleri*, 415 Pa. 218, 202 A.2d 521 (1964); *Otto Will*, 349 Pa. 205, 36 A.2d 797 (1944); *Perry v. Dicken*, 105 Pa. 83, 51 Am.Rep. 181 (1884). Both the Canons of Ethics, Canon 19, and the Code of Professional Responsibility, Disciplinary Rules 5–101 and 5–102, specifically proscribe such conduct.

▮ We discuss these matters not merely to add to the growing chronicle of examples of problems in current ineffective assistance doctrine, *see, e.g., Commonwealth v. Alexander*, 495 Pa. 26, 432 A.2d 182 (1981); *Commonwealth v. Watlington*, 491 Pa. 241, 420 A.2d 431 (1980); *see also Commonwealth v. Brown*, 313 Pa.Super. 256, 263, 459 A.2d 837, 840 (1983) (*en banc*) (concurring opinion of Spaeth, J.); but to emphasize that claims wherein counsel challenges his *own* effectiveness are not favored and should not be asserted. The professional improprieties and procedural wastefulness described above, repeated again and again despite the strongest words of disapproval voiced by this and the Supreme Court, are the proper subjects of ameliorative efforts.

For the purposes of this case, we conclude that several factors compel us to withhold our recognition of the claim

now pressed by Smith. First, counsel failed to raise this question before the trial court. This failure on his part took place despite the example set for him by trial counsel for Appellant Garvin who raised this issue in her post-trial motions and then stepped aside in order to allow post-trial and appellate counsel to advance this and other properly preserved claims. Smith's counsel attended an evidentiary hearing at which Garvin's trial counsel was called to testify concerning this very point. Despite having this claim drawn to his attention in this potent manner, counsel stated not one word on behalf of his own client. Second, counsel also failed, despite the example set for him by Bradley's trial counsel, to step aside and allow new and independent counsel to prosecute this appeal. In such a posture, we could have stayed proceedings in this court pending an evidentiary hearing. We would also not be confronted with the unenviable position of being required to assess the trustworthiness of one who comes before us in the twin roles of interested witness and advocate. Third, as noted above, counsel's delay has permitted him to bring before this court averments of fact outside of the record to which the Commonwealth cannot properly respond and which we cannot properly evaluate. Counsel's failure in this regard carries with it a strong disregard for the orderly adminis-tration of justice by asking us to assume the role of fact-finder at the same time that we are unable to afford the Commonwealth an opportunity to be heard in rebuttal. Fourth, counsel does not challenge as ineffective his failure to bring this alleged error before the trial court in post-trial motions. By this failure, he attempts to avoid the kind of burden that would be placed upon independent successor counsel who must allege the ineffectiveness of each preced-ing counsel.

Fifth, an examination of the cases in which counsel raised his own or an associate's ineffectiveness on direct appeal where the case was remanded for an evidentiary hearing on counsel's alleged ineffectiveness shows that in most cases counsel either raised his own ineffectiveness in the trial

court by means of post-trial motions, *Commonwealth v. Patrick,* 477 Pa. 284, 383 A.2d 935 (1978); *Commonwealth v. Cooke,* 288 Pa.Super. 205, 431 A.2d 360 (1981); *Commonwealth v. Smoyer, supra; Commonwealth v. McCarty,* 280 Pa.Super. 102, 421 A.2d 425 (1980); *Commonwealth v. Jellots,* 277 Pa.Super. 358, 419 A.2d 1184 (1980); *Commonwealth v. Aye,* 275 Pa.Super. 369, 418 A.2d 767 (1980); *Commonwealth v. Hart,* 272 Pa.Super. 189, 414 A.2d 1071 (1979); or attacked as ineffective his failure to preserve the issue, *Commonwealth v. Quarles,* 284 Pa.Super. 473, 426 A.2d 145 (1981); *Commonwealth v. Stump,* 281 Pa.Super. 317, 422 A.2d 187 (1980); *Commonwealth v. Jackson,* 280 Pa.Super. 522, 421 A.2d 845 (1980); *Commonwealth v. Vigue,* 279 Pa.Super. 46, 420 A.2d 736 (1980); *Commonwealth v. Beecher,* 278 Pa.Super. 309, 420 A.2d 555 (1980); *Commonwealth v. Williams,* 277 Pa.Super. 86, 419 A.2d 673 (1980); *Commonwealth v. Harrison,* 275 Pa.Super. 249, 418 A.2d 706 (1980); *Commonwealth v. Lennox,* 270 Pa.Super. 254, 411 A.2d 514 (1979).[26] We also note that this court has expressly ruled that:

> [C]ounsel must raise his own ineffectiveness, if he is to raise it at all, at the first available time. In the instant case, counsel would have had to raise that claim in post-trial motions. Failing that, counsel could have contended before this Court that he had been ineffective in failing to file proper post-trial motions and requested the right to file post-verdict motions *nunc pro tunc.* Be-

---

**26.** There are cases in which it is not clear whether the claim raised on appeal was raised in the post-trial motions submitted to the trial court, *Commonwealth v. Towns,* 290 Pa.Super. 436, 434 A.2d 831 (1981); *Commonwealth v. Nance,* 290 Pa.Super. 312, 434 A.2d 769 (1981); *Commonwealth v. Butler,* 279 Pa.Super. 496, 421 A.2d 308 (1980); *Commonwealth v. Viall,* 278 Pa.Super. 613, 420 A.2d 710 (1980); *Commonwealth v. Frazier,* 278 Pa.Super. 247, 420 A.2d 523 (1980); *Commonwealth v. Boyer,* 277 Pa.Super. 82, 419 A.2d 671 (1980); and at least one case in which it is not clear whether counsel attacked his ineffectiveness in failing to file post-trial motions containing the issue, *Commonwealth v. Gardner,* 480 Pa. 7, 389 A.2d 58 (1978). There is also one direct appeal where the case was remanded after the client raised his counsel's ineffectiveness only on appeal but in a *pro se* brief. *Commonwealth v. Folino,* 293 Pa.Super. 347, 439 A.2d 145 (1981).

cause counsel did not raise the claim properly, we hold that the issue is waived.

*Commonwealth v. Matt,* 249 Pa.Super. 98, 106–107, 375 A.2d 777, 780–781 (1977) (Hoffman, J., with three judges joining, three judges concurring in the result) (footnotes and citations omitted).

This case continues to be viable. *Commonwealth v. Tran,* 307 Pa.Super. 489, 494, 453 A.2d 993, 995 (1982).

Finally, but by no means least in importance, we observe that Appellant Smith is not foreclosed from having this claim heard on collateral attack pursuant to the Post Conviction Hearing Act (PCHA).[27] Counsel who is alleged to be ineffective cannot foreclose his client from obtaining a hearing on the ineffectiveness issue. *Commonwealth v. Dancer,* 460 Pa. 95, 100, 331 A.2d 435, 438 (1975). Such a claim may be fully waived only by the failure of new and independent counsel to raise and litigate the issue. *Commonwealth v. Hubbard,* 472 Pa. at 277 n. 7, 372 A.2d at 699 n. 7 (1977). *See also Commonwealth v. Matt, supra; Commonwealth v. Drake,* 489 Pa. 541, 545–547 and n. 6, 414 A.2d 1023, 1025–1026 and n. 6 (1980). We also observe that there is no greater impediment to the prompt scheduling of PCHA proceedings than there is to the scheduling of proceedings on remand. In nearly all material respects, these proceedings would be the same: new counsel would need to be obtained, the time investigating and preparing for the hearings would be the same, and all parties would still be able to obtain appellate review.

For all of the foregoing reasons, therefore, we neither reach the merits of the issue nor remand for an

27. Post Conviction Hearing Act, Act of January 25, 1966, P.L. 1580 (1965), § 1 et seq., 19 P.S. § 1180–1 et seq., *repealed,* Act of April 28, 1978, P.L. 202, No. 53, § 2(2) (1397) effective June 27, 1980, *as amended* by Act of June 26, 1980, P.L. 265, No. 77, § 2 delaying repeal until June 27, 1981, *as further amended* by the Act of June 26, 1981, P.L. 123, No. 41, § 1 delaying repeal until June 26, 1982, *repealed* by Act of May 13, 1982, P.L. 587, No. 1982–122, § 3, *replaced* by 42 Pa.C.S. § 9541 et seq.

evidentiary hearing; for the purposes of *this* appeal only, the issue is deemed to have been waived.[28]

## C. Appellant Garvin

 Similarly, Appellant Garvin also argues that *his* trial counsel was ineffective in failing "to ask for and use the number of peremptory challenges to which appellant was entitled to [sic] under Pa.R.Crim.P. 1126." Brief for Appellant Garvin at 16. In this instance, the issue is properly presented. In post-trial motions, trial counsel raised her own ineffectiveness and then she stepped aside to allow present counsel to replace her. Before an appeal was filed and during the pendency of the post-trial motions, a hearing was held attended by all the defendants and their counsel as well as a representative of the District Attorney's Office. Appellant Garvin's trial counsel testified at the hearing on the issue of her alleged ineffectiveness. We will therefore proceed to consider the issue on the merits.

In ruling on this issue, the trial court stated:

[C]ounsel was not ineffective for failing to ask for additional peremptory challenges. The defendants were allowed a total of nine and only seven were used in seating the jury. The fact that counsel was unaware of Rule 1126 and that they were entitled to more peremptory challenges than they actually used does not make counsel ineffective .... Counsel has shown no prejudice as a result of being unfamiliar with the new rule.

(Tr.Ct.Op. at 31–32.)

We agree with the trial court's ultimate conclusion of the ineffectiveness issue. However, we premise our affirmance on slightly different ground.[29]

The standard by which we assess claims of ineffective assistance of counsel is familiar and often repeated:

**28.** There is no impediment to appellant collaterally attacking his conviction on this ground.

**29.** We may, of course, affirm the trial court if any ground for affirmance exists. *Commonwealth v. Dancer,* 460 Pa. 95, 101 n. 5, 331 A.2d 435, 438 n. 5 (1975).

In resolving this contention we are guided by the standard set forth in *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A.2d 349, 352 (1967):

> [C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate client's interests.

The initial factor which must be considered in applying this reasonable basis standard is whether the claim which ... counsel is charged with not pursuing had some reasonable basis. In *Maroney,* we noted that "a finding of ineffectiveness could never be made unless we concluded that the alternatives not chosen afforded a potential for success substantially greater than the tactics actually utilized." *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. at 605 n. 8, 235 A.2d at 353 [n. 8].... It is only when the claim which was foregone was of arguable merit that we must make an inquiry into the basis for ... counsel's decision not to pursue the matter. Thus, the starting point of our inquiry is whether there were reasonable grounds to advance the ... claims which were not advanced....

*Commonwealth v. Hubbard,* 472 Pa. 259, 277–278, 372 A.2d 687, 695–696 (1977). (Original emphasis.)

 We believe that the trial court correctly required Appellant Garvin to show that some prejudice [30] to his defense occurred because of counsel's alleged shortcomings. However, we hasten to add that this showing is accomplished by establishing that the claim foregone is of arguable merit. An examination of the law of other jurisdictions, both Federal [31] and State,[32] reveals that a showing

---

**30.** The Commonwealth continues to argue in this court that there was no prejudice to appellants' defense. Brief for the Commonwealth at 10.

**31.** The question of the need for a showing of prejudice within the context of an ineffectiveness claim has, in the recent past, received a great deal of attention in the Federal courts, achieving somewhat varied results. The United States Court of Appeals for the First Circuit requires that the accused bear the burden of establishing

of prejudice is almost always required. The courts of this Commonwealth have adhered to a different verbal formula than that used in any other jurisdiction. This requirement

"actual prejudice" to his defense by reason of counsel's alleged failures. *United States v. Campa,* 679 F.2d 1006, 1014 (1st Cir.1982); *United States v. Ritch,* 583 F.2d 1179, 1183 (1st Cir.1978), *cert. denied,* 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430. The Second Circuit is in accord. *United States v. Aulet,* 618 F.2d 182, 188 (2nd Cir.1980); *LiPuma v. Commissioner, Dept. of Corrections,* 560 F.2d 84, 92 (2nd Cir.1977), *cert. denied,* 434 U.S. 861, 98 S.Ct. 189, 54 L.Ed.2d 135. The Third Circuit has long recognized that an inquiry into prejudice is an element of ineffective counsel analysis, *United States ex rel. Green v. Rundle,* 434 F.2d 1112, 1115 (3d Cir.1970), but the exact nature of that inquiry remains uncertain. *Compare: United States v. Baynes,* 687 F.2d 659, 669–673 (3d Cir.1982) (utilizing "harmless error" analysis) *with United States v. Laura,* 667 F.2d 365, 370–371 (3d Cir.1981) (no adverse impact on defendant's representation nor any other prejudice to her defense).

The Fourth Circuit has apparently had little occasion to consider the question, but has in the past recognized a harmless error test in conjunction with ineffectiveness claims. *Coles v. Peyton,* 389 F.2d 224, 226 (4th Cir.1968), *cert. denied,* 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120. The Fifth and the new Eleventh Circuits draw on the same case law and thus have similar requirements that prejudice be shown. *Washington v. Strickland,* 673 F.2d 879 (5th Cir.1982), *modified on rehearing en banc,* 693 F.2d 1243 (5th Cir.1982) (*en banc* ), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983); *Adams v. Balkcom,* 688 F.2d 734, 738–739 (11th Cir.1982); *Gray v. Lucas,* 677 F.2d 1086, 1092–1093 (5th Cir.1982); *Washington v. Watkins,* 655 F.2d 1346, 1362–1363 and n. 32 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982). The Sixth Circuit at one time rejected any use of even a harmless error analysis, but has since waivered on that issue as well as on the use of prejudice in the ineffectiveness context. *Compare: Beasley v. United States,* 491 F.2d 687, 696 (6th Cir.1974); *with United States v. Sumlin,* 567 F.2d 684, 688–689 (6th Cir.1977), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978). The Seventh Circuit, too, has rejected the use of harmless error analysis and yet has required that the defendant make some plausible showing of prejudice to his defense due to counsel's derelictions. *Compare: United States ex rel. Healey v. Cannon,* 553 F.2d 1052, 1057 n. 7 (7th Cir.1977), *cert. denied,* 434 U.S. 874, 98 S.Ct. 221, 54 L.Ed.2d 153, *with United States v. Berkwitt,* 619 F.2d 649, 659 (7th Cir.1980); *United States v. Cooper,* 580 F.2d 259, 263 n. 8 (7th Cir.1978); *Matthews v. United States,* 518 F.2d 1245, 1246 (7th Cir. 1975); and *United States v. Ingram,* 477 F.2d 236, 240 (7th Cir.1973), *cert. denied,* 414 U.S. 840, 94 S.Ct. 94, 38 L.Ed.2d 76.

The Eighth and Ninth Circuits have consistently required that prejudice to the defendant's case be shown before a prima facie case of constitutional ineffectiveness is made out. *Eighth Circuit: Walker v. Solem,* 687 F.2d 1235, 1236–1237 n. 3 (8th Cir.1982); *United States v. Kelly,* 687 F.2d 1217, 1219 (8th Cir.1982); *Nevels v. Parratt,* 596 F.2d

developed out of the seminal case of *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. at 605 n. 8, 235 A.2d at 353 n. 8, quoted only in part by the court in *Commonwealth v. Hubbard, supra.* In full, the *Washington* court stated:

344, 346–347 (8th Cir.1979), *cert. denied*, 444 U.S. 859, 100 S.Ct. 122, 62 L.Ed.2d 79; *McQueen v. Swenson*, 498 F.2d 207, 218–220 (8th Cir.1974); *Ninth Circuit: United States v. Sanford*, 673 F.2d 1070, 1073 (9th Cir.1982); *United States v. Altamirano*, 633 F.2d 147, 152–153 (9th Cir.1980); *United States v. Winston*, 613 F.2d 221, 223 (9th Cir.1980); *Cooper v. Fitzharris*, 586 F.2d 1325, 1331–1333 (9th Cir.1978) (*en banc*), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979). The Tenth Circuit, like the Sixth and Seventh Circuits, once disavowed the use of even a harmless error analysis, but has since come full circle and now requires that some showing of prejudice be made. *Compare: United States v. Porterfield*, 624 F.2d 122, 125 (10th Cir. 1980), *with United States v. Golub*, 694 F.2d 207, 214–216 (10th Cir.1982). Finally, the District of Columbia Circuit has consistently followed the analysis set forth by Judge Leventhal in the lead opinion in *United States v. Decoster*, 624 F.2d 196 (D.C.Cir.1979) (*en banc*), *cert. denied*, 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 311, requiring a showing that counsel committed a "serious incompetency" as a result of which the outcome of the trial was "probably affected" and there is no showing, on rebuttal by the Government, that no actual harm occurred. *United States v. Green*, 680 F.2d 183, 188–189 (D.C.Cir. 1982) (*per curiam*); *United States v. Patterson*, 652 F.2d 1046, 1048 (D.C.Cir.1981); *United States v. Hinton*, 631 F.2d 769, 782–783 (D.C. Cir.1980); and *United States v. Wood*, 628 F.2d 554, 559 (D.C.Cir.1980) (*en banc*) (*per curiam*).

32. The great majority of our sister States also require that a showing of prejudice of some sort be made before a convicted defendant may obtain a new trial on ineffectiveness grounds. *See: Annotation-Modern Status of Rules and Standards in State Courts as to Adequacy of Defense Counsel's Representation of Criminal Client*, 2 A.L.R. 4th 27, 83–99 (1980). The standards vary, however. At one extreme, some courts require a showing that counsel's failure deprived the accused of a material or substantial defense or that the attorney's inadequate performance actually affected the outcome of the case. *See, e.g., People v. Pope*, 23 Cal.3d 412, 152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R. 4th 1 (1979); *Commonwealth v. Saferian*, 366 Mass. 89, 315 N.E.2d 878 (1974); *Lang v. Murch*, 438 A.2d 914, 915 (Me.1981); *Wesley v. United States*, 449 A.2d 282, 284 (D.C.App.1982). Other states require only that counsel's incompetence be shown to have "contributed to the conviction," *Siemon v. Stoughton*, 184 Conn. 547, 440 A.2d 210, 213 (1981), or some other similar standard part-way between an outcome-determinative test and harmless error analysis. *Delahunt v. State*, 440 A.2d 133, 135–136 (R.I.1982) (had counsel taken that steps sought by defendant, they "would not have added anything of substance to the defense"). Still others apply only a harmless error analysis.

Cases such as *Commonwealth ex rel. Gallagher v. Rundle*, 423 Pa. 356, 223 A.2d 736 (1966) and *Commonwealth ex rel. Jones v. Maroney*, 417 Pa. 567, 209 A.2d 285 (1965) indicate that for relief to be granted, appellant must demonstrate that counsel's ineffectiveness worked to his prejudice. Appellant, however, advances the proposition that any requirement of prejudice is inconsistent with *White v. Maryland*, 373 U.S. 59, 83 S.Ct. 1050 [10 L.Ed.2d 193] (1963) and *Hamilton v. Alabama*, 368 U.S. 52, 82 S.Ct. 157 [7 L.Ed.2d 114] (1961). [These two cases held that no prejudice need be shown when counsel is not made available to an indigent defendant at a critical stage of pre-trial proceedings.] Since our test requires that we examine the approach employed by counsel in light of the available alternatives, a finding of ineffectiveness could never be made *unless the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized.* Obviously, then, if there is no reasonable basis to support ... counsel's decisions (a finding prerequisite to a conclusion of ineffectiveness), his decisions *a fortiori* were prejudicial to the client. (Emphasis supplied.)

Thus, by including the emphasized language with the definition of "arguable merit," the *Hubbard* court implicitly acknowledged that a showing of prejudice is required for a showing of counsel's ineffectiveness. The prejudice which a defendant must show is that the claim or tactics foregone, if pursued, would have altered the chances for a successful defense both positively and substantially. When an accused fails to show or allege this form of prejudice, our courts will conclude that his or her claim is without merit. *Commonwealth v. Hubbard, supra.*

■■■■ An analysis of our cases supports this conclusion. In *Commonwealth v. Pettus*, 492 Pa. 558, 563, 424 A.2d 1332, 1335 (1981), the Supreme Court rejected a claim of ineffectiveness saying:

Assertions of ineffectiveness in a vacuum cannot be ineffectiveness. Counsel who is alleging ineffectiveness

must set forth an offer to prove at an appropriate hearing sufficient facts upon which a reviewing court can conclude that trial counsel may have in fact, been ineffective. This Court will no longer consider claims of ineffective assistance of counsel in the abstract. Boiler plate allegations ... are insufficient ....

Even more recently, our Supreme Court has rejected an ineffectiveness claim based on the alleged failure of trial counsel to pursue vigorously a motion for change of venue. In *Commonwealth v. Vogel*, 501 Pa. 314, 461 A.2d 604 (1983), the court articulated two grounds for its ruling. First, the defendant in that case had not shown that he would have been able to obtain a change of venue even if trial counsel had pursued such a motion. *Id.*, 501 Pa. at 329, 461 A.2d at 611. Second, the court stated:

[E]ven if we accept as inadequate counsel's reasons for failing to pursue the motion for change of venue with more vigor, that fact alone would not justify a disturbance of a final judgment absent a further showing that the asserted dereliction deprived Mr. Vogel of a fair trial. This was certainly not a situation that would justify a presumption of prejudice.

*Id.*, 501 Pa. at 329, 461 A.2d at 612.

Also, an *en banc* panel of this court has recently rejected a claim that counsel was ineffective for failing to examine the record and preserve the defendant's claim that certain physical evidence should have been suppressed. In *Commonwealth v. Brown*, 313 Pa.Super. 256, 459 A.2d 837 (1983), this court stated:

Nowhere does Brown tell us exactly *what* was wrong with the stewardship and disposition of his suppression motion or *how* it prejudiced him.

*Id.*, 313 Pa.Superior Ct. at 260, 459 A.2d at 839 (original emphasis).

Likewise, in "missing witness" cases, the accused must show that (1) counsel knew of the existence of the witness who purportedly should have been called, (2) the witness was available to testify, and (3) the testimony of the witness

would have appreciably strengthened the defense. *Commonwealth v. McKenna*, 498 Pa. 416, 446 A.2d 1274 (1982); *Commonwealth v. Robinson*, 487 Pa. 541, 410 A.2d 744 (1980); *Commonwealth v. Stokes*, 294 Pa.Super. 529, 440 A.2d 591 (1982); *Commonwealth v. Ashley*, 277 Pa.Super. 287, 419 A.2d 775 (1980). When the claimed ineffectiveness rests on the assertion that counsel should have filed a post-verdict motion for relief, the defendant must specify the trial errors which should have been preserved, *Commonwealth v. McFarland*, 304 Pa.Super. 470, 473–74, 450 A.2d 1008, 1010 (1982), as well as show how those omitted objections were "arguably important and had a chance of succeeding." *Commonwealth v. Hubbard*, 472 Pa. at 285, 372 A.2d at 699. The same is true when the defendant attacks his attorney's failure to file a pre-trial motion to suppress. *Commonwealth v. Costanzo*, 309 Pa.Super. 267, 455 A.2d 153 (1983). When a defendant argues that counsel omitted the presentation of a defense, that defense must be both "material and favorable." *Commonwealth v. McKenna, supra,* 498 Pa. at 422, 446 A.2d at 1277. Likewise, when a defendant alleges that his counsel failed to attack the credibility of a witness by means of prior inconsistent testimony, the defendant must demonstrate the nature of those inconsistencies and their materiality. *Commonwealth v. McFarland, supra.*

We are aware that the Supreme Court of Pennsylvania has also ruled that a harmless error analysis does not apply to claims of ineffective assistance of counsel. *Commonwealth v. Badger*, 482 Pa. 240, 244, 393 A.2d 642, 644 (1978). The court in *Badger* relied specifically on United States Supreme Court precedent which stated that the "assistance of counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.'" *Holloway v. Arkansas*, 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978), quoting *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827–828, 17 L.Ed.2d 705 (1967). This may still be true for certain categories of ineffectiveness or right-to-counsel

cases. *See, e.g.,* cases where no counsel was afforded, *White v. Maryland, supra; Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Hamilton v. Alabama, supra;* where a systematic defect for which the state was responsible prevented counsel from performing functions vital to effective representation such as *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) and *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975); where counsel is required to operate under an actual conflict of interest or fails to detect such a conflict such as in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) and *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); or where counsel's derelictions are so pervasive and substantial that no precise degree of prejudice can in fact be shown such as *Davis v. Alabama,* 596 F.2d 1214 (5th Cir.1979), vacated as moot, 446 U.S. 903, 100 S.Ct. 1827, 64 L.Ed.2d 256 (1980). However, where counsel proceeds unhindered by governmental misconduct and where there are no circumstances from which inherent prejudice may logically be presumed, the United States Supreme Court has unanimously stated that "certain violations of the right to counsel may be disregarded as harmless error." *United States v. Morrison,* 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981). Additionally, the court stated that absent some real or threatened "adverse effect upon ... counsel's representation or ... some other prejudice to the defense ... there is no basis for imposing a remedy in that proceeding, which can go forward with full recognition of the defendant's right to counsel and to a fair trial." *Id.* We thus conclude that *Badger* and its progeny, *Commonwealth v. Stitzel,* 309 Pa.Super. 43, 47–8, 454 A.2d 1072, 1074 (1982) and *Commonwealth v. Williams,* 273 Pa.Super. 147, 416 A.2d 1132 (1979), no longer correctly reflect the law. We thus conclude that Appellant Garvin was required to show some form of prejudice to his defense before his claim of ineffectiveness of the part of his trial counsel could be deemed to be of arguable merit.

After a thorough review of the record, we hold that Appellant Garvin failed to make the requisite showing. At the post-trial hearing, trial counsel for Appellant Garvin was the only witness called to testify. (N.T. 5/6/81 at 5–9.) She stated that, at the time of trial, she "thought that we were entitled to seven [peremptory challenges], a total of seven for the three defendants." She further testified that she was unaware of the change in Pa.R.Crim.P. 1126 which increased the number of peremptory challenges permitted. Counsel also stated that, had she been aware of the change, she "would have asked for a minimum of three ... and a maximum of seven...." She also stated that she had not been "satisfied" with the jury selected and that she would have exercised additional peremptory challenges if she thought them available. She explained:

At the time we conducted the voir dire we exhausted all seven challenges, so that before the jury selection was completed the three counsel and the defendants had used up the seven we thought we were entitled to. We would have used more if there were additional challenges available to us.

(N.T. 5/6/81 at 9.)

Contrary to the assertion of counsel and contrary to a statement in the trial court's opinion, Tr.Ct.Op. at 31, we believe that the record shows that *eight* peremptory challenges were utilized by defense counsel in selecting the jury. By examining the transcribed record of the voir dire, we can identify the column on the jury selection sheets used to record the peremptory challenges exercised by counsel for the defense. There are a total of eight recorded peremptory strikes. Because more challenges were utilized than counsel remembered being permitted to exercise, substantial doubt is cast upon her ability to accurately recall the other circumstances surrounding this claim.

However, even if her memory be correct, her testimony provides no basis for a claim to relief. We find this case to be similar to *Commonwealth v. Stokes, supra,* 294 Pa.Super. at 541, 440 A.2d at 597. In that case, this court found

unpersuasive a defendant's single bald assertion that the testimony of a missing witness would have been helpful to his case.

> Appellant's single reference to [the witness'] prospective assistance is hardly a "positive demonstration" that her testimony would have been helpful to Appellant's defense, and we will not find counsel ineffective for failure to produce her.

What was needed in *Stokes* and what is needed in the present case is more than a conclusory assessment of the facts underlying the claimed ineffectiveness. These underlying circumstances must be elicited so as to enable the court to make its own assessment. As noted above, counsel testified that she had not been "satisfied" with the jury. However, we are not told the source from which this dissatisfaction stemmed. We cannot, nor could the trial court, independently assess the reasonableness of that dissatisfaction. Counsel did not state that any specific juror would have been excused nor that any specific juror fell below her personal threshold of "satisfaction" nor did she explain how her criteria for acceptability were structured. In short, there is no indication that the jury that would have been selected would have been "fairer" or "less unfair" than the panel which actually heard the case. We cannot therefore conclude that trial counsel's failure to exercise the additional peremptory challenges to which she was entitled deprived appellant of an alternative with "a potential for success substantially greater than the tactics actually utilized." [33] *Commonwealth v. ex rel. Washington v. Maroney, supra.* Furthermore, although such evidence may not be essential to a claim of this type, we note that there is no evidence on this record which in the slightest manner impugns the fairness of the jury which heard this

---

**33.** Contrast the situation in *Commonwealth v. Stitzel,* 309 Pa.Super. 43, 454 A.2d 1072 (1982), where counsel permitted a potential juror to remain on the panel although that juror had a relatively close relationship to the family of the victim. We do not mean to intimate that proof of prejudice must be as substantial or as specific as that in *Stitzel,* but some prejudice must be shown. On this record, there is none.

case. Indeed, the jury acquitted Appellant Garvin of two charges and acquitted Appellants Smith and Bradley of three charges each. Because appellant has not carried his burden of showing that he would have benefitted in some way from the exercise of the additional peremptory chal-lenge, he has failed to show that his claim has any arguable merit.

## IV

. **[40]** The final issue presented on appeal is raised on behalf of Appellant Bradley. Appellant argues that his trial counsel was ineffective for failing to call two witnesses who, purportedly, could have provided exculpatory evidence. However, appellant has failed to inform us of what the missing witnesses would have testified to, how that would have been helpful to him or that the witnesses were avail-able to testify on his behalf. *Commonwealth v. Payne,* 309 Pa.Super. 25, 454 A.2d 1063 (1982); *Commonwealth v. Ashley,* 277 Pa.Super. 287, 291–293, 419 A.2d 775, 777–778 (1980). This claim need not be remanded for the purpose of .holding an evidentiary hearing for appellant has failed to allege a claim which, even if proved true, would be of arguable merit. *Commonwealth v. Pettus, supra.*

For all the foregoing reasons, the judgments of sentence are affirmed.

SPAETH, J., files a concurring and dissenting opinion.

SPAETH, Judge, concurring and dissenting:

I join in the majority's opinion as to appellants Smith and Bradley. However, I disagree with the majority's holding that appellant Garvin may not prevail on his claim that counsel was ineffective because he did not prove that coun-sel's failure to request the minimum number of peremptory challenges to which he was entitled under Rule 1126 preju-diced him at trial. At 208.

The result of the majority's holding is that the right to effective assistance of counsel does not apply during voir dire proceedings, for it can never be proved that if the composition of the jury had been different, the result at

trial would have been different. In appraising counsel's conduct during voir dire, I should therefore inquire whether Garvin was prejudiced in the context of the jury selection process, not in the context of what happened afterwards in the trial.

As the majority acknowledges, each of appellants was entitled to a minimum of three peremptory challenges under Rule 1126(b)(1). At 200. At the post-trial hearing, Garvin's trial counsel testified that she was dissatisfied with the composition of the jury, and that if she had known that Garvin had a right to a minimum of three peremptory challenges, she would have asked for and would have used the additional challenge. N.T. 6–8. I believe that this testimony was sufficient to show that Garvin was prejudiced in the context of the jury selection process: there could be no reasonable basis for counsel's confessed ignorance of the amendments to Rule 1126, and but for her ignorance, she would have sought to improve (from Garvin's point of view) the composition of the jury by exercising the additional peremptory challenge to which Garvin was entitled under Rule 1126(b)(1).

I therefore believe that the judgment of sentence against Garvin should be vacated and as to him, the case should be remanded for a new trial. Otherwise I concur in the majority's order.