358 A.2d 56

**COMMONWEALTH of Pennsylvania**

v.

**Isaac GRAHAM, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 23, 1975.

Decided May 12, 1976.

Charles Lowenthal, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Gold-blatt, Asst. Dist. Atty., Chief, Appeals Div., Glen Gito-mer, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROB-ERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

O'BRIEN, Justice.

Appellant, Isaac Graham, was tried by a judge sitting with a jury and found guilty of two counts of murder in the first degree. Post-trial motions were denied and appellant was sentenced to two concurrent life sentences. This appeal followed.

Appellant first argues that the evidence presented by the Commonwealth was insufficient to establish his guilt beyond a reasonable doubt. In viewing the evidence in a light most favorable to the Commonwealth, the evidence established the following. Appellant's brother, John Graham, testified for the Commonwealth that on January 24, 1972, appellant and Otis Tate approached John Graham and asked him if he would aid appellant and Tate in the purchase of a handgun. John agreed and drove to the residence of Willie Clinkscales, Jr. in Philadelphia. After some discussion between appellant and Clinkscales, an agreement was reached and a further meeting was arranged in order to transfer possession of the weapon. At this second meeting appellant and Tate paid for the weapon but did not receive it. In an effort to obtain a return of their money John Graham on January 26, 1972 drove appellant and Tate to the Clinkscales residence again but no one was at home. The trio again returned to the Clinkscales home at 1:00 p. m. on January 26, 1972. This time Smith and Clinkscales, the two who were supposed to sell the weapon to appellant, were

seen walking down the street. At this point appellant and Tate forced Smith and Clinkscales into their automobile and parked in front of the Clinkscales residence. The four then entered the house while appellant's brother, John Graham, remained in the car outside the home. After a short time John Graham entered the home to find Smith and Clinkscales sitting on a couch with Tate pointing a .25 or .32 caliber revolver at them. John Graham stated that Tate accused him of concealing the whereabouts of Smith and Clinkscales and that Tate stated, "I want to blow somebody's . . . head off anyway . . . ." John Graham then told Tate that his car was double parked on the street and that he must move it. John Graham left the residence and did not return. About a week later John stated that he saw appellant at their mother's home and inquired if appellant had heard what had happened to Smith and Clinkscales. Appellant replied, "mind your own business." On January 26, 1972, Pearl Lee Clinkscales, the mother of Willie Clinkscales, returned home at 4:45 p. m. and found Smith and Willie shot to death in the basement of her home with their hands and feet tied behind their backs. A medical examiner testified that he arrived at the Clinkscales' house at approximately 7:35 p. m. that evening and that both victims had been shot with a .25 caliber revolver. Based upon this evidence, the jury found appellant guilty of two counts of murder in the first degree.

In the instant case appellant's conviction was based upon circumstantial evidence which, if believed, was sufficient in law to prove his guilt beyond a reasonable doubt. See *Commonwealth v. Strand*, 464 Pa. 544, 347 A.2d 675 (1975).

Appellant next argues that the district attorney committed reversible error in his summation to the jury. He contends that the district attorney's remarks relating to Otis Tate, appellant's alleged co-conspirator, were in-

flammatory and prejudicial to appellant's cause. The district attorney's remarks referred to statements made by Tate to John Graham during the course of the conspiracy that were admitted into evidence. The district attorney's summation concerned the evidence adduced at trial and in no way was prejudicial or inflammatory.

Appellant also argues that since the judge charged on the theory of conspiracy, the jury was entitled to know that his co-felon had already been acquitted in a previous trial. We do not agree. The result that was obtained by appellant's co-felon had no bearing in his trial and was not admissible. See *Commonwealth v. Amato,* 449 Pa. 592, 297 A.2d 462 (1972).

Lastly, appellant argues that he was precluded from establishing that his brother, John Graham, testified against him in return for favorable treatment by the district attorney's office concerning outstanding robbery charges pending against John at the time of appellant's trial. At trial, Edward Rendell, assistant district attorney, stated as part of the Commonwealth's case that he had spoken with John Graham prior to appellant's trial and that the district attorney's office agreed that in exchange for John's testimony bail would be arranged and that the district attorney's office would inform the judge who heard John's case that he had cooperated with the Commonwealth in a murder case. Rendell stated that no promises or specific deals were made by the district attorney's office in return for John's testimony at his brother's trial. On cross-examination John stated that no specific deals were made for his testimony. Because of the importance of the above issue, a court en banc hearing was held at which appellant presented the testimony of Phyllis Subin of the Public Defender's office, who represented John Graham. She testified that John's file contained a notation that he was going to be a witness against his brother in a murder trial and that John

was to get special treatment from the district attorney's office. The note was signed by Richard A. Winters, also a Public Defender.

In addition, appellant called a representative of the Clerk of Court's Office, who testified that John's case had been postponed several times and that he finally pled guilty to the robbery charges and received five years' probation. The court en banc, after hearing this testimony, found that the jury was fully aware of the facts surrounding the testimony of John Graham and that appellant was not prejudiced in any way. We agree. The jury had sufficient facts to assess the credibility of John Graham and all the facts surrounding his testimony. Cf. *Commonwealth v. Powell*, 449 Pa. 126, 295 A.2d 295 (1972).

Judgment of sentence affirmed.

ROBERTS, J., filed a concurring opinion in which POMEROY, NIX and MANDERINO, JJ., join.

ROBERTS, Justice (concurring).

██ I agree that the record contains evidence which is sufficient to support appellant's conviction of murder in the first degree. However, I believe that additional observations are appropriate.

John Graham (Graham), the Commonwealth's key witness, testified that in the early afternoon of January 26, 1972, he, appellant and Tate returned to the victims' house at appellant's suggestion. Tate forced the victims into Graham's car with either a .25 or .32 caliber pistol. Shortly after Tate and appellant forced the victims into the Clinkscales' house, Graham appeared. He quoted Tate as stating: "I want to blow somebody's . . . head off anyway . . . . " Graham left the scene shortly thereafter, at approximately 1:30 p. m.

A medical examiner testified that he arrived at the Clinkscales' house at approximately 7:35 p. m. that evening. The feet of both victims had been tied and drawn up into their backs with heavy rubber cable and both had been shot in the temple. He placed the time of death at between two and six hours prior to his arrival and stated that .25 caliber bullets were recovered from the victims' heads.

The test for the sufficiency of evidence is "whether, viewing all of the evidence admitted at trial in the light most favorable to the Commonwealth and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Bastone*, 466 Pa. ——, ——, 353 A.2d 827, 829 (1976); see *Commonwealth v. Green*, 464 Pa. 557, 565, 347 A.2d 682, 686 (1975); *Commonwealth v. Robson*, 461 Pa. 615, 625, 337 A.2d 573, 578 (1975).

Here, the evidence shows that appellant initiated the trip to the victims' house, that he was present in the house when Tate stated his desire to kill the victims and that the victims were tied up in such a manner as to indicate that one person could not have committed the crime alone. Tate's weapon was identified as either a .25 or .32 caliber pistol and .25 caliber bullets were recovered from the fatal wounds. When appellant was questioned by Graham concerning the whereabouts of the victims more than a week after the incident, appellant forecefully told Graham to mind his own business and told him that "he don't know nothing." Finally, a medical expert estimated the hour of death as being shortly after Graham's departure from the Clinkscales' residence.

The evidence in this record, together with all reasonable inferences, is sufficient to enable a jury to find beyond a reasonable doubt that appellant participated in

424

these execution-style murders.   I therefore concur in the majority's result.

POMEROY, NIX and MANDERINO, JJ., join in this concurring opinion.