425 A.2d 334

COMMONWEALTH of Pennsylvania,

v.

Edwin C. MEREDITH, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 21, 1980.

Decided Jan. 27, 1981.

Joseph H. Reiter, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div. Asst. Dist. Atty., Michelle Goldfarb, Asst. Dist. Atty., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

ROBERTS, Justice.

At issue on these appeals is whether appellant Edwin Meredith, while on trial before a jury for his alleged criminal involvement in the shooting death of one person and the beating of another, should have been permitted to establish that one of his witnesses, Geraldine Stetler, has been acquitted on charges arising out of the same incident. Unlike the trial court, we are satisfied that appellant validly sought to introduce evidence of his witness's acquittal for the limited purpose of removing a "cloud" cast over the witness's testimony by Commonwealth evidence indicating the witness's involvement in the alleged crimes. Because the court erred in refusing appellant's valid request for permission to make limited use of evidence of his witness's acquittal, judgment of sentence must be vacated and appellant must be granted a new trial.

### I

The episode giving rise to the present prosecution was the culmination of long-standing animosity between Robert and Nancy Mendel, alleged victims of criminal activity, and their next-door neighbors, James and Geraldine Stetler, as well as James Horner (Geraldine Stetler's first husband and friend of the Stetlers) and David Horner, his son by Geraldine Stetler. Appellant Meredith is a friend of the Stetlers and Horner.

By the Commonwealth's account of the episode, on the evening of May 7, 1977, James Horner and appellant threatened and assaulted Nancy Mendel in order to provoke her

husband, Robert Mendel. Robert Mendel fended off the attack and called the police. That same evening, while standing on a front porch common to both the Mendel and Stetler residences and awaiting the arrival of the police, Robert Mendel allegedly was pulled inside the Stetler home by appellant and James Horner. There, with separate weapons, both James Stetler and David Horner shot Mendel in the back.

When police arrived, appellant as well as James and David Horner and James and Geraldine Stetler were taken to the Police Administration Building. All five were arrested and charged. Geraldine Stetler's trial was held before appellant's. She was acquitted.

Appellant was tried on charges of criminal homicide, including voluntary and involuntary manslaughter, criminal conspiracy, and aggravated and simple assault. In presenting the Commonwealth's case against appellant to the jury, the prosecutor also brought out evidence of Geraldine Stetler's relationship to the alleged shooting. For example, the prosecutor asked William McBurnie, a neighbor of the Mendels, if he saw any of the Stetlers or Horners after the police arrived at the scene. The following colloquy ensued:

"A. I saw them bringing the people out, out of the Horner [sic] household.

Q. Who was the first person you saw brought out?

A. Geraldine Stetler."

The prosecutor pursued the inquiry, dwelling upon what happened upon the arrival of police. After ascertaining that a policeman had kicked in the door of the Stetler house, pulled his gun, and gone into the house, the prosecutor and McBurnie had the following exchange:

"Q. And how long after that did you see Mrs. Stetler?

A. It was a while. I mean, it wasn't right away. About 15 minutes maybe.

Q. And where did she come out of the house?

A. The front door.

Q. And where was—

A. The policeman brought her out and put her in the back seat of a regular police car.

Q. And where was Robert Mendel at the time?

A. He was laying on the step.

Q. And how did she get down from her door to the police car?

A. Stepped over him."

The prosecutor produced similar evidence regarding Geraldine Stetler on the examination of Ronald Herling, the police officer answering a call informing police of the shooting. After Officer Herling testified that he had observed Geraldine Stetler holding a gun, the following colloquy ensued between the prosecuting attorney and Herling:

"Q. And what did Mrs. Stetler do with the gun? What did you do in relationship to the gun after you saw her having it in her hand?

A. I started to approach her and she made the statement: I did it, I shot him.

Q. What did you do, sir?

A. At that point I took the rifle off of her and told her she was under arrest."

The prosecuting attorney produced a rifle, which Herling identified as the rifle he had taken from Geraldine Stetler. The prosecuting attorney then had Herling demonstrate to the jury how Geraldine Stetler had been holding the rifle when he first observed it.

Additionally, Nancy Mendel, victim of the alleged assault and spouse of the decedent, gave testimony regarding Geraldine Stetler's involvement. After implicating appellant in both the alleged assault against her and the shooting of her husband, Nancy Mendel stated that she heard Geraldine Stetler say, " 'When the police get here, tell them I did it.' " The prosecuting attorney then repeated this testimony referring to Geraldine Stetler's statement, asking the witness what amount of time elapsed between Geraldine Stetler's statement and the arrival of police.

Appellant denied the existence of any agreement either to assault Nancy Mendel or to kill Robert Mendel. According to appellant, the Mendels were the sole aggressors. On appellant's version, Robert Mendel was shot after he had burst into the Stetler residence, swinging a bat, destroying the Stetlers' furniture and threatening those inside.

The defense called as a witness previously-acquitted Geraldine Stetler. After describing numerous instances in which the victim Robert Mendel had displayed violent tendencies, she confirmed the defense version that, just before the shooting, Robert Mendel had burst into the Stetler residence, swinging an object. She claimed that she had then seen "what looked like sparks." She also testified that, when police arrived, she had said, "I did it," and that, once in police custody, she had given police a statement. However, she further testified that the statement was untrue insofar as it contained an admission that she had shot Robert Mendel.

Near the conclusion of Geraldine Stetler's direct testimony, appellant sought permission to ask the witness "whether she was charged in this case and whether those charges have been disposed of and how they were disposed of, just so that there would be no cloud over this witness."[1] The court denied the request, stating, "I don't think that's relevant." The defense completed its case and the jury returned verdicts of guilty of murder of the first degree, criminal conspiracy, and simple assault.

On written post-verdict motions, appellant lodged objection to the exclusion of the acquittal evidence. The post-verdict court viewed appellant's offer of Geraldine Stetler's acquittal as similar to cases of this Court where a defendant has been refused permission generally to introduce evidence of a co-defendant's acquittal as evidence that the defendant is equally innocent. See e. g., *Commonwealth v. Amato*, 449

[1]. The court previously sustained the prosecuting attorney's objection to a question appellant sought to put to Nancy Mendel, which began, "At the trial of Mrs. Stetler where she was acquitted—." In view of our disposition we have no occasion to review this ruling.

Pa. 592, 297 A.2d 462 (1972), and *Commonwealth v. Graham*, 467 Pa. 417, 358 A.2d 56 (1976) (plurality opinion). The post-verdict court agreed with the trial court that evidence of Geraldine Stetler's acquittal had "no relevance." The court then imposed a sentence of life imprisonment on the murder conviction, a concurrent term of five to ten years on the conspiracy conviction, and a term of one to two years on the simple assault conviction, to run concurrent to the life sentence but consecutive to the sentence of five to ten years. These appeals followed.

## II

It is certainly true that a person accused of crime may not introduce evidence of the acquittal of another person charged in connection with the same episode to create an impression before the jury that the defendant is equally innocent. As this Court observed in *Commonwealth v. Amato*, supra, where such a general offer was made and refused, resolution of the issue whether the defendant committed a murder during a felony is "not . . . aided in the slightest by the admission of evidence of the fact that another jury concluded that another defendant had not committed the robbery-murder." 449 Pa. at 596–97, 297 A.2d at 465. See also *Commonwealth v. Byrd*, 490 Pa. 544, 417 A.2d 173 (1980).

Here, however, the record is clear that, contrary to the views of the trial court, the post-verdict court, and the Commonwealth, appellant did not seek to introduce evidence of Geraldine Stetler's acquittal generally in the manner proscribed by cases such as *Amato*. Instead, appellant sought to introduce evidence of Geraldine Stetler's acquittal for the narrow, limited purpose of clarifying the disposition of the arrest of Geraldine Stetler brought out on earlier presentation of Commonwealth evidence and thus to dispel any unfavorable impression of his witness which jurors might well have formed as a result of the Commonwealth's evidence relating to the charges against her.

On this record, appellant's request to introduce evidence of Geraldine Stetler's acquittal for the limited purpose

8

of removing the cloud of criminal charges over his witness, created by Commonwealth evidence, was entirely proper. In *Commonwealth v. Quaranta*, 295 Pa. 264, 145 A. 89 (1928), the defendant and two of his witnesses had been indicted on a charge of homicide. Much as here, the witnesses had been acquitted before the defendant's trial, but were "referred to by the Commonwealth's witnesses as being in the murder car at the time of the homicide. . . . " 295 Pa. at 268, 145 A. at 91. Although this Court upheld the trial court's denial of the defendant's offers of testimony bearing on the witnesses' acquittal, it did so because, unlike here, counsel for the defendant "did not state any definite purpose for which the proof was offered." 295 Pa. at 269, 145 A. at 91. *Quaranta*, however, observed that, if not explained by evidence of the witness's acquittal, Commonwealth evidence tending to show the complicity of the accused and his witnesses "could be kept prominently before the jury throughout the trial, impairing, if not destroying, the value of their testimony." 295 Pa. at 271, 145 A. at 92.

This observation of *Quaranta* has been followed in *Commonwealth v. Dennison*, 441 Pa. 334, 272 A.2d 180 (1971). There, this Court affirmed an order of a trial court granting a new trial on the basis that on cross-examination the Commonwealth should have first questioned a defense witness regarding an alleged prior inconsistent statement before using the statement as impeachment evidence. This Court also pointed out that, as here, the court refused to permit the defense to show that a defense witness had been tried and acquitted on the same offense. "Whether or not this evidence is admissible for the limited purpose as bearing on [the witness's] credibility at trial should be considered in the light of our decision in *Commonwealth v. Quaranta* . . . . " 441 Pa. at 339, 272 A.2d at 182.[2]

Under *Quaranta*, and *Dennison*, appellant should have been permitted to introduce evidence of Geraldine Stetler's

2. *Quaranta* adds that "the fact of acquittal of a witness, as shown by verdict and judgment, is competent proof to affect the credibility of eyewitnesses who have testified to witness' presence at the homicide and participation therein." 295 Pa. at 271, 145 A. at 92. This

acquittal. Without the opportunity to present such evidence, there indeed remained what appellant has termed a "cloud" over Geraldine Stetler's testimony. In the words of *Quaranta*, evidence indicating the witness's involvement was "kept prominently before the jury throughout the trial, impairing, if not destroying, the value of [the witness's] testimony." Principles of fairness embodied in *Quaranta*, and *Dennison*, as well as our commitment to the integrity of the fact-finding process, require that an opportunity be given to the accused to remove this "cloud."

## III

Any concern that the limited use appellant properly sought to make of his witness's acquittal will have the same effect as a general offer is misplaced. As *Quaranta* makes clear, "[t]he use of the evidence should be carefully limited to this purpose by the trial judge, and its connection with the case explained to the jury." 295 Pa. at 271, 145 A. at 92. This is precisely what appellant sought by his limited offer.

Equally misplaced is the Commonwealth's focus upon the claimed facts that "[t]he prosecutor did not argue that Mrs. Stetler stood to gain by an acquittal in defendant's case nor did he exploit her status as an accused in any manner." Letter-brief of Commonwealth at 12. Even assuming that these claimed facts are true (a rather dubious assumption in light of the record revealing the prosecutor's persistence in presenting the jury with details of Geraldine Stetler's conduct), it is clear that *Quaranta* does not, and in fairness cannot, limit its approval of the defense's circumscribed use of acquittal evidence to cases where the prosecuting attorney somehow emphasizes or exploits evidence of the defense witness's alleged involvement. Rather, *Quaranta* examines whether there is Commonwealth evidence which tends to show that a defense witness is an accomplice. If there is such evidence, *Quaranta* makes clear that the defense may

additional basis for admitting evidence of a witness's acquittal is not pressed by appellant here. Our cases, however, are clear that this aspect of *Quaranta*, like the aspect discussed in text, remains valid today. See *Commonwealth v. Gray*, 441 Pa. 91, 271 A.2d 486 (1970).

introduce evidence of the witness's acquittal, for the limited purpose of restoring the value of the defense witness's testimony.

■ Because appellant's proper effort to make limited use of his witness's acquittal was refused, judgment of sentence is vacated and appellant is granted a new trial.[3]

Judgment of sentence vacated and new trial granted.

LARSEN, J., concurs in the result.

NIX and KAUFFMAN, JJ., file dissenting opinions.

NIX, Justice, dissenting.

I must dissent with the majority's conclusion that appellant should have been permitted to establish that the defense witness, Geraldine Stetler, had been acquitted on charges arising out of the same incident. The majority states, " . . . we are satisfied that appellant validly sought to introduce evidence of his witness's acquittal for the limited purpose of removing a 'cloud' cast over the witness's testimony by Commonwealth evidence indicating the witness's involvement in the alleged crimes." However, it is a well established principle that in the absence of an attack upon credibility, no sustaining evidence is allowed. *McCormick on Evidence*, Section 49 (2d ed. 1972).

In this case, the witness, Geraldine Stetler's credibility was not attacked. In presenting the Commonwealth's case,

---

3. In view of our disposition, we do not address appellant's other claims of trial error, including whether the trial court: (1) should have suppressed inculpatory statements; (2) should have permitted appellant to argue that Nancy Mendel changed her testimony; (3) improperly instructed the jury on identification testimony; (4) improperly restricted cross-examination of a prosecution witness; (5) erred in excluding inculpatory statements of David Horner and James Stetler; (6) erred in failing to exclude a police officer's testimony that appellant reported the shooting; (7) erred in permitting the continued service of a juror who had personal contact with a police witness; and (8) erred in admitting statements and acts of co-conspirators occurring after the conspiracy had allegedly ended.

We have, however, considered appellant's contention that the evidence is insufficient to support the verdicts. Our review of the record, in the light most favorable to the Commonwealth, the verdict-winner, see e. g., *Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1976), convinces us that the evidence is sufficient.

the prosecutor merely elicited facts pertaining to the shooting of Robert Mendel. Through the recitation of these facts, this witness's involvement became evident. The fact that her conduct may have reflected unfavorably upon her does not justify treating this evidence as an attack upon her credibility which would warrant the grant of a request to rehabilitate her.

KAUFFMAN, Justice, dissenting.

It is probable that evidence of the acquittal of defense witness Geraldine Stetler would have created the impression before the jury that the defendant was equally innocent, and the majority recognizes that admission of such evidence generally would be improper. *See Commonwealth v. Amato*, 449 Pa. 592, 297 A.2d 462 (1972). I agree with the courts below that evidence of whether Geraldine Stetler was charged in connection with this episode and, if so, whether she was acquitted is not relevant to resolution of appellant's guilt or innocence. Since the prejudice resulting from admission of such evidence, even for a limited purpose, would be overwhelming and not in the interest of truth-seeking and justice, it was appropriately excluded. Accordingly, I would affirm the Judgment of Sentence.