J-A20042-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA　:　IN THE SUPERIOR COURT OF
　　　　　　　　　　　　　　　　　　　　:　　　　　PENNSYLVANIA
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　v.　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
BRANDON THOMPSON　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Appellant　　　　　　　:　No. 479 EDA 2023

Appeal from the Judgment of Sentence Entered September 14, 2022
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0006670-2019

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:　　　　　　　**FILED DECEMBER 18, 2024**

　　　　Appellant, Brandon Thompson, appeals from the September 14, 2022 judgment of sentence entered in the Court of Common Pleas of Montgomery County following his convictions for First-Degree Murder, Burglary, Robbery-Inflicts Serious Bodily Injury, Robbery-Commits or Threatens to Commit a Felony, and Possession of a Weapon, and two counts of Robbery-Fear of Imminent Serious Bodily Injury.[1]  Appellant challenges the denial of his request for a continuance to obtain new counsel, his post-sentence motion challenging the weight of the evidence, and his motion to suppress, as well as certain evidentiary rulings.  After careful review, we affirm.

---

[1] 18 Pa.C.S. §§ 2502(a), 3502(a)(1)(i), 3701(a)(1)(i), 3701(a)(1)(iii), 907(b), and 3701(a)(1)(ii) respectively.

**A.**

We glean the relevant factual and procedural history from the trial court's October 26, 2023 opinion. On April 2, 2019, at 10:53 PM, police responded to a report of gunshots at an apartment in Norristown and found Alonzo Anthony ("Victim") deceased from multiple gunshot wounds. Police spoke with Victim's wife, M.G., who stated that Victim had gone downstairs because they had heard banging on the door and after hearing tussling, a tall, masked man ("first assailant") came upstairs to their bedroom and demanded drugs and money. She gave him both and the assailant took Victim's cell phone and keys. A second assailant then brought Victim into another room, followed by the first assailant, and M.G. heard two gunshots. The second assailant ran out of the apartment, and the first assailant stayed for 3 to 5 minutes before running out. M.G. described the first assailant as a Black man in a ski mask who was 6 feet tall and husky, who spoke in a fake voice, and carried a firearm. She described the second assailant as 5 feet, 6 inches tall and wearing a ski mask.

Police also spoke with a neighbor, who stated that he had seen a man exit Victim's residence and run towards Green Valley Road. On Green Valley Road, police recovered a hat with cutouts like a ski mask and submitted it for DNA analysis. Police also recovered surveillance footage showing that, one minute after the 911 call, one suspect ran along Green Valley Road and turned onto Wood Street, and 3 minutes later, a second suspect ran the same way and began shedding clothing near where the hat was found.

In August 2019, the DNA results indicated that Appellant was a presumptive positive match for the DNA on the hat. Police interviewed Appellant, who became very nervous when police mentioned his DNA on the hat. They also obtained a DNA sample for comparison, which indicated that his DNA was the "most prevalent" DNA on the hat. Trial Ct. Op., 10/26/23, at 3.

Police also learned that Appellant drove a burgundy Kia. They recovered surveillance footage, which showed a burgundy Kia traveling towards Victim's house 20 to 25 minutes before the homicide, and a responding officer's dash camera footage, which showed a burgundy Kia driving away from the area. Both videos showed that the Kia had several distinctive features—wraparound headlights, 5-spoke wheels, and pinstriping.

Police then obtained a warrant for Appellant's cell phone subscriber information, call records, and cell cite data. A cell site analysis determined that, at 3:42 PM on the day of the homicide, Appellant's phone was near Victim's residence and traveled down Green Valley Road onto Wood Street, the same route that the suspects ran after the homicide. Later that afternoon, his cell phone traveled to Reading, Pennsylvania, then returned, accessing cell sites in a general direction towards Norristown. From 8:25 PM to 11:04 PM, the phone remained at a location in Norristown "a couple minutes" from Victim's residence, then left the area 10 to 15 minutes after the homicide. *Id.* at 5. Police also traced Victim's stolen cell phone and determined that it was in the same general area as Appellant's cell phone following the homicide.

Based on Appellant's cell phone data, police obtained a search warrant for his Google location data.

M.G. later told police officers that Victim had been selling Percocet pills, including to Appellant. She also stated that Appellant had attended two memorial events for Victim, even though she and Appellant were not close, and that she had told several people that Appellant had the same build as the first assailant.

Following their investigation, police arrested both Appellant and Rashaan Stevenson for the murder of Victim. Prior to trial, Appellant filed a motion to suppress asserting that the warrant for his cell phone data was not supported by probable cause, and that his Google location data, obtained via a later warrant based on his cell phone data, was fruit of the poisonous tree. The court denied the motion. The Commonwealth filed a motion in *limine* to introduce evidence of Appellant's drug use to establish motive for the murder, which the court granted.

The Commonwealth tried Appellant and Mr. Stevenson together in February 2022. Patrick McMenamin, Esq., a public defender, represented Appellant. Relevantly, Detective William Mitchell testified as an expert about the investigation into Appellant's cell phone data, including that his cell phone traveled with Mr. Stevenson's cell phone on the day of the homicide. Detective James Wood testified as an expert on Appellant's drug-related social media communications. The jury acquitted Mr. Stevenson of all charges but was unable to reach a verdict as to Appellant.

- 4 -

The court scheduled Appellant's retrial for September 12, 2022. Prior to the second trial, the Commonwealth filed a motion in *limine* to preclude any reference to the first trial, which the court addressed at a pre-trial conference on August 29, 2022. In response to the Commonwealth's motion, Appellant argued that Detective Mitchell "will be testifying regarding the movements of [Appellant's] cell phone in conjunction with a second cell phone. I think that it's appropriate cross-examination fodder to get into that he previously had offered an opinion that had not been accepted by the jury." N.T. Pretrial Conference, 8/29/22, at 9. The court rejected Appellant's argument and granted the Commonwealth's motion. Attorney McMenamin also stated that he was unsure whether he would call Mr. Stevenson as a witness.

Also at the pretrial conference, the Commonwealth requested permission to elicit testimony from Detective Wood that Appellant communicated about drugs on social media prior to the homicide but not in the month of April, after the homicide. In response, Appellant challenged the relevance of this testimony. The court ascertained that the Commonwealth planned to elicit this testimony through one yes-or-no question, as it did in the first trial, and allowed it.

At the next pre-trial conference on September 8, 2022, Appellant had a "heated" off-the-record discussion with Attorney McMenamin and then informed the court that Attorney McMenamin did not plan to call a witness whom Appellant wanted called. N.T. Trial, 9/12/22, at 8. The court explained that it was likely a strategic choice. The same day, Matthew Quigg, Esq.,

appeared before the court on an unrelated matter and asked the court, off the record, if it would grant a continuance so that Appellant could retain him. The court refused, and, thus, Attorney Quigg declined to represent Appellant.

On September 12, 2022, the morning of trial, Appellant requested a continuance. He informed the court that he sought to retain Francis Walsh, Esq., because Attorney McMenamin would not call Mr. Stevenson as an alibi witness. Attorney Walsh was not present, and Appellant was unsure how long he would need to prepare but estimated that he would need one month. The court denied the request.

Appellant then proceeded to trial. At trial, the Commonwealth's witnesses testified in accordance with the above facts. Additionally, Detective Mitchell testified about the investigation into Appellant's cell phone data. The Commonwealth also introduced evidence of Appellant's drug use, including through Detective Wood's testimony. Several witnesses also testified that Appellant drove a burgundy Kia, including Dalin Sim, Appellant's paramour who had rented the Kia for Appellant.

The jury convicted Appellant of the above charges. Appellant filed post-sentence motions challenging, *inter alia*, the weight of the evidence, which the court denied.

**B.**

This timely appeal followed. Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant raises the following issues for our review:

I. Did the trial court deny Appellant of his right to counsel of his choice under Article 1, Section 9 of the Pennsylvania constitution and the 6th and 14th amendments of the United States Constitution in denying a continuance request where counsel was ready to enter his appearance and trial counsel sought to withdraw his appearance due to being discharged by Appellant?

II. Did the trial court err in failing to grant a new trial where the verdict was against the weight of [] Appellant's involvement [such] that it shocked the conscience and constituted a manifest injustice?

III. Did the suppression court err in finding that the search warrants for cellular telephone and geolocation data contained probable cause and [were] not overbroad in their scope?

IV. Did the trial court abuse its discretion in not permitting questioning related to Appellant's codefendant, who was acquitted at a previous trial, where evidence of co-defendant's lack of involvement was relevant to the credibility of the Commonwealth's evidence as it related to Appellant?

V. Did the trial court err in admitting prior bad acts evidence related to Appellant's drug use?

Appellant's Br. At 6-7. [2]

## C.

Appellant first asserts that the trial court denied his right to counsel of his choice under Article 1, Section 9 of the Pennsylvania Constitution and the 6th and 14th amendments of the United States Constitution because it denied his request, made on the morning of trial, for a continuance to obtain new counsel. *Id.* at 12.

---

[2] Although Appellant included an additional issue in his Statement of Questions Involved challenging the sufficiency of the evidence establishing his identity, he explicitly withdrew this issue in his brief. Appellant's Br. at 6, 20.

The decision to grant or deny a continuance request is within the sound discretion of the trial court, and we will not reverse the decision absent a clear abuse of discretion. *Commonwealth v. McAleer*, 748 A.2d 670, 673 (Pa. 2000). It is well-settled that "an abuse of discretion is not merely an error of judgment[,]" but occurs when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record[.]" *Id.* (citations and internal quotation marks omitted). This Court "will not find an abuse of discretion if the denial of the continuance request did not prejudice the appellant." *Commonwealth v. Pettersen*, 49 A.3d 903, 914 (Pa. Super. 2012).

Both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution guarantee a defendant's right to counsel. *McAleer*, 748 A.2d at 673. "In addition to guaranteeing representation for the indigent, these constitutional rights entitle an accused to choose at his own cost and expense any lawyer he may desire." *Id.* (internal quotation marks and citation omitted). However, a defendant's constitutional right to counsel of his choice is not absolute and "must be weighed against and may be reasonably restricted by the state's interest in the swift and efficient administration of criminal justice." *Commonwealth v. Robinson*, 364 A.2d 665, 674 (Pa. 1976) (internal quotation marks omitted). A defendant's right to choose private counsel "must be exercised at a

reasonable time and in a reasonable manner." *Commonwealth v. Rucker*, 761 A.2d 541, 542-43 (Pa. 2000) (citation and emphasis omitted).

In *Commonwealth v. Prysock*, 972 A.2d 539 (Pa. Super. 2009), we set forth the following factors to consider when reviewing a trial court's ruling on a request for a continuance to obtain new counsel: (1) whether the court "conducted an 'extensive inquiry' into the underlying causes of defendant's dissatisfaction with current counsel[;]" (2) whether those differences constituted "irreconcilable differences[;]" (3) the "number of prior continuances in the matter[;]" (4) "the timing of the motion" for continuance; (5) "whether private counsel had actually been retained[;]" and (6) "the readiness of private counsel to proceed in a reasonable amount of time." *Id.* at 543 (citation omitted).

Regarding factor 2, we have held that a "breakdown in communication" with counsel and counsel's failure to call character witnesses on the appellant's behalf does not constitute irreconcilable differences, and instead "amount[s] to legal advice that [the appellant] did not want to accept[.]" *Commonwealth v. Broitman*, 217 A.3d 297, 300-01 (Pa. Super. 2019) (applying *Prysock* factors and determining that trial court did not abuse its discretion in denying continuance to retain new counsel). In *Broitman*, we also held that factor 4 weighed against granting a continuance requested "on the eve of trial," when trial had been scheduled for 2 months. *Id.* at 300; *see also Commonwealth v. Boettcher*, 459 A.2d 806, 810 (Pa. Super. 1983) ("condemn[ing] the practice of waiting until the day of the trial to request a

- 9 -

continuance [to obtain] a new attorney[;]" noting that appellant did not indicate that she had hired a private attorney until the day of trial).

\*

Appellant maintains that he sought new counsel due to an "irreconcilable conflict," *i.e.*, Attorney McMenamin refusing to call Mr. Stevenson as an alibi witness, even though he had "created the impression" at the pretrial conference that he would. He concludes that the trial court, thus, abused its discretion and "denied [Appellant] of his right to counsel" when it refused to grant a continuance so that he could obtain private counsel. Appellant's Br. at 12, 14-15. Appellant reviews the **Prysock** factors and argues that the court did not conduct an "extensive inquiry" into the disagreement with Attorney McMenamin; rather, he contends that the court only incorrectly categorized the dispute as a "disagreement over trial strategy." **Id.** at 16. He also contends that he informed the court at the earliest opportunity and had not caused other delays. **Id.** at 15-17. He also argues that the court abused its discretion in denying the continuance by relying on (1) the lack of new counsel, for which he faults the court because it refused his request for a continuance, (2) the lack of a Notice of Alibi, which Appellant notes he could not have filed himself, and (3) a "partiality [toward] moving the trial forward." **Id.** at 14, 18. Finally, he explains that he did not call Mr. Stevenson at the first trial due to Mr. Stevenson's self-incrimination issues that disappeared following his acquittal at the first trial. **Id.** at 17.

The trial court concluded that its consideration of the **Prysock** factors supported its decision to deny the continuance. Trial Ct. Op. at 20-23. The court found that Appellant was not prejudiced by its ruling because it would not have permitted Mr. Stevenson to testify due to the lack of Notice of Alibi and noted that a continuance would have prejudiced the Commonwealth. **Id.** at 21.

Our review of the **Prysock** factors supports the denial of the continuance request, and, thus, we discern no abuse of discretion. Regarding factor 1, the court conducted an inquiry into Appellant's dissatisfaction with Attorney McMenamin. N.T. Trial, 9/12/22, at 17-21. With respect to factor 2, we agree with the trial court's conclusion that Attorney McMenamin's decision not to call Mr. Stevenson as an alibi witness was a strategic decision that was likely in Appellant's best interest and in line with the trial strategy that had resulted in a hung jury in Appellant's first trial. Appellant's disagreement with Attorney McMenamin over trial strategy did not constitute an irreconcilable difference. **See Broitman**, 217 A.3d at 300. Moreover, the record contains no evidence that new counsel, if retained, would have chosen to call Mr. Stevenson as an alibi witness. Regarding factor 3, although almost three years had elapsed between Appellant's arrest and his second trial, Appellant had not requested a prior continuance.[3] With respect to factor 4, Appellant requested the continuance on the morning of trial. Finally,

_____

[3] This is the only **Prysock** factor that does not necessarily weigh in favor of denying a continuance.

- 11 -

regarding factors 5 and 6, Appellant had not yet obtained new counsel, he did not know when new counsel would be ready, and estimated counsel would need one month to prepare.

When considering these factors together, we are unable to conclude that the court's denial of the continuance indicates that "the law [was] overridden or misapplied, or the judgment exercised [was] manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record[.]" *McAleer*, 748 A.2d at 673. Accordingly, this claim lacks merit.

**D.**

Appellant next asserts that the trial court abused its discretion when it denied his post-sentence motion challenging the weight of the evidence. Appellant's Br. at 20. He argues that the verdict was against the weight of the evidence and "shock[ed] the conscience" because M.G.'s testimony at trial was inconsistent with her statements she had provided to police after the incident. *Id.* Specifically, he argues that her trial testimony "shifted to better match a description of Appellant" and "diverged from her [four prior] statements to police[,]" in which she did not describe the assailant as "thick, husky, or muscular," or say that he used a fake voice. *Id.* at 23. He argues that M.G.'s allegedly inconsistent trial testimony "directly led to [his] conviction" because the remaining evidence is "not so overwhelming so as to overcome [M.G.'s] false testimony." *Id.* at 25. (internal quotation marks and citations omitted). Appellant supports his challenge to M.G.'s credibility by

noting that M.G. testified before the jury that she barely knew him but at the sentencing hearing stated that her son called him "uncle." *Id.* at 24.

Our review of the record indicates that Appellant did not mention the discrepancy between M.G.'s police statements and her trial testimony as a basis for his weight claim presented to the trial court. It is well-settled that an appellant must raise a weight claim before the trial court in, *inter alia*, a post-sentence motion to preserve it for appeal. *Commonwealth v. Mikell*, 968 A.2d 779, 780 (Pa. Super. 2009); *see also* Pa.R.Crim.P. 607 comment (same). Furthermore, if an appellant fails to raise a particular argument concerning the weight of the evidence before the trial court, he cannot raise it for the first time on appeal. *See*, *e.g.*, *Commonwealth v. Jones*, 191 A.3d 830, 835 (Pa. Super. 2018) (finding waiver where the appellant failed to raise specific weight of the evidence arguments before the trial court, which prevented the trial court from addressing those arguments).

Here, Appellant challenged the weight of the evidence in a post-sentence motion. However, he asserted only that the verdict was against the weight of the evidence because, relevantly, "[M.G.] was the lone eyewitness to the [crime], yet despite knowing [Appellant] her entire life could not identify him either by his appearance or physical characteristics, or by his voice[;]" and that "[M.G.'s] testimony that [Appellant] and [Victim] were not friends, or close, was clearly false given that [M.G.] testified at the sentencing hearing that her children called [Appellant] "uncle[.]" Post-Sentence Motion, 9/29/22, at ¶¶ 20, 31(e). Appellant did not specifically raise any claim regarding a

discrepancy between M.G.'s statements to the police and her trial testimony. Accordingly, he failed to preserve this argument for our review. *Jones*, 191 A.3d at 835. It is, thus, waived.[4]

**E.**

Appellant next challenges the court's denial of his pretrial suppression motion because the search warrant seeking his cell phone's data was not supported by probable cause. He also asserts the search was unconstitutionally overbroad because it lacked specificity. Appellant's Br. at 26.

Our review of a challenge to the denial of a suppression motion is limited to "determining whether the [s]uppression [c]ourt's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010). This Court is bound by the factual findings of the suppression court, but we

---

[4] Moreover, even if Appellant had preserved this argument, we would conclude it would fail to garner relief. It is well-settled that "[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000). An abuse of discretion is "where the judgment is manifestly unreasonable[,] where the law is not applied[,] or where the record shows that the action is a result of partiality, prejudice, bias[,] or ill will." *Id.* (citation omitted). Notably, "[t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Miller*, 172 A.3d 632, 642 (Pa. Super. 2017) (citation omitted). Following our review, we discern no abuse of discretion in the trial court's denial of Appellant's post-sentence motion based on its finding that the weight of the evidence supports the verdict. Trial Ct. Op. at 35-36.

are not bound by its legal conclusions, which we review *de novo*.
***Commonwealth v. Briggs***, 12 A.3d 291, 320-21 (Pa. 2011). We may review only "the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." ***Commonwealth v. Harlan***, 208 A.3d 497, 499 (Pa. Super. 2019).

It is well-established that "[n]o search warrant shall issue but upon probable cause supported by one or more affidavits[.]" Pa.R.Crim.P. 203(B). The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits." ***Id.*** In Pennsylvania, the reviewing court "must limit [its] inquiry to the information within the four corners of the affidavit submitted in support of probable cause[.]" ***Harlan***, 208 A.3d at 505 (citation omitted).

"Probable cause exists where, based upon a totality of the circumstances set forth in the affidavit of probable cause, including the reliability and veracity of hearsay statements included therein, there is a fair probability that. . . evidence of a crime will be found in a particular place." ***Commonwealth v. Fletcher***, 307 A.3d 742, 746 (Pa. Super. 2023) (citation omitted). Furthermore, "the task of the issuing magistrate is simply to make a practical, common-sense decision[.] And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." ***Commonwealth v. Gray***, 503 A.2d 921, 925 (Pa. 1985) (internal brackets and ellipsis omitted) (quoting ***Illinois v. Gates***, 462 U.S. 213, 238-39 (1983)).

- 15 -

In reviewing the affidavit, the issuing magistrate may consider a police officer's experience as a relevant factor in determining probable cause. *Commonwealth v. Randolph*, 151 A.3d 170, 183 (Pa. Super. 2016). However, the officer must prove a "nexus between his experience and the search, arrest, or seizure of evidence." *Id.* (citation omitted). "The very foundation of the *Gates* totality test is the recognition that all relevant factors go into the probable cause mix." *Commonwealth v. Thompson*, 985 A.2d 928, 935 (Pa. 2009).

With respect to the contents of a warrant, the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution require that warrants "describe with particularity the items sought[.]" *Commonwealth v. Young*, 287 A.3d 907, 919 (Pa. Super. 2022). Our Court has interpreted Article I, Section 8 to require that a search warrant describe the items sought "as specifically as is reasonably possible." *Commonwealth v. Ani*, 293 A.3d 704, 716 (Pa. Super. 2023) (citation omitted). The particularity requirement, thus, prohibits the issuance of a search warrant "that is not particular enough and a warrant that is overbroad." *Young*, 287 A.3d at 919-20 (citations omitted).

In addressing an overbreadth challenge, "the natural starting place. . .is to determine for what items probable cause existed." *Commonwealth v. Green*, 265 A.3d 541, 551 (Pa. 2021). Next, a court measures the "sufficiency of the description" in the warrant "against those items for which there was probable cause." *Id.* at 550 (citation omitted). "Any unreasonable

discrepancy between the items for which there was probable cause to search and the description in the warrant requires suppression," because the "warrant is overbroad, ambiguous, or perhaps both." *Id.* (citation and brackets omitted). The above standard for an overbreadth challenge applies equally to warrants seeking digital information on personal electronic devices, such as cellphones. *Id.* at 553-54.

\*

Appellant argues that the evidence referenced in the affidavit of probable cause connecting him to the homicide was weak and failed to establish a nexus between his cell phone and the crime. Appellant's Br. at 26-28. He further contends that Detective Mitchell's statement in the affidavit about his experience with criminals' use of cell phones was not specific enough to support a finding of probable cause in this case. *Id.* at 28-29. He also argues that the search warrant was overbroad because it "failed to detail exactly how probable cause existed" for each of the types of records sought. *Id.* at 32. Finally, Appellant maintains that the Google location data was "fruit of the poisonous tree" because the later search warrant was based on the cell phone data obtained from the first search warrant that was not supported by probable cause.[5] *Id.* at 34.

---

[5] Appellant also argues that the warrant was overbroad because it sought records from a month before the homicide and four months after the homicide. Appellant's Br. at 29-33. However, our review of the record reveals that Appellant failed to raise this theory before the suppression court. It is well-
*(Footnote Continued Next Page)*

The trial court determined that there was probable cause to issue the search warrant for Appellant's cell phone data because DNA evidence and the surveillance video linked Appellant to the homicide and, based on Detective Mitchell's training and experience, co-conspirators often plan crimes via cell phone. Trial Ct. Op. at 39. The court also found that the search warrant was not overbroad because it did not authorize an "unlimited and open ended" search of the phone, such as for the content of text messages. *Id.* The court concluded that the magistrate correctly determined that the search warrant was supported by probable cause and, thus, the later warrant for location data was not fruit of the poisonous tree. *Id.* at 39-40.

Following our review, we conclude that the suppression court properly deferred to the magistrate's probable cause determination because there was a substantial basis for that finding. Specifically, M.G.'s statements indicated that there were two suspects, surveillance video indicated that one of the suspects discarded a hat, and DNA testing on the recovered hat indicated that one suspect was likely Appellant. Accordingly, the detectives had probable cause to believe Appellant was involved in the homicide, along with another suspect. It was a "practical, common-sense determination" that call records

---

settled that "[i]ssues not raised in the lower court are waived[.]" Pa.R.A.P. 302(a). Accordingly, "appellate review of an order denying suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal." *Commonwealth v. Little*, 903 A.2d 1269, 1272-73 (Pa. Super. 2006). Since Appellant failed to raise before this argument before the suppression court, it is waived.

might indicate the identity of Appellant's co-conspirator and that cell site data might indicate whether Appellant was present at the scene. *Gray*, 503 A.2d at 925. Moreover, we agree with the court that the warrant was specific and limited in scope, not overbroad, and the location data was not "fruit of the poisonous tree." Appellant's challenge to the denial of his suppression motion, thus, garners no relief.

**F.**

In his next issue, Appellant asserts that the court abused its discretion when it precluded any reference to Mr. Stevenson at trial. Appellant's Br. at 34. Specifically, he asserts that if he had been able to reference Detective Mitchell's testimony from the first trial that Appellant's cell phone traveled with Mr. Stevenson's cell phone, that evidence would "impeach the credibility of Detective Mitchell and the investigation" at the retrial. *Id.* at 34-35. In other words, Appellant's argument implies that the fact that the jury at the first trial acquitted Mr. Stevenson shows that Detective Mitchell's testimony was not credible, and the Commonwealth's investigation was severely flawed so the jury in the second trial would have acquitted Appellant.

We review evidentiary rulings for an abuse of discretion. *Commonwealth v. Thompson*, 106 A.3d 742, 754 (Pa. Super. 2014). As noted above, an abuse of discretion is "the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of

record." **Commonwealth v. Harris**, 884 A.2d 920, 924 (Pa. Super. 2005) (citations omitted).

Our Supreme Court has held that "a person accused of crime may not introduce evidence of the acquittal of another person charged in connection with the same episode to create an impression before the jury that the defendant is equally innocent." **Commonwealth v. Meredith**, 425 A.2d 334, 337 (Pa. 1981). In **Meredith**, the appellant presented the testimony of a co-conspirator who had been acquitted of crimes charged in connection with the same murder for which the appellant was on trial. **Id.** at 337. Following her testimony, the Commonwealth introduced evidence of the witness's involvement and arrest. **Id.** at 336-37. The trial court did not, however, permit the appellant to introduce evidence that she had been acquitted. **Id.** Our Supreme Court ultimately determined that evidence of the co-defendant's acquittal was admissible "for the limited purpose of restoring the value of the defense witness's testimony." **Id.** at 339.

Our Court later emphasized that **Meredith**'s "holding represents a narrow exception to the general rule that evidence of the verdict in a co-conspirator's case is inadmissible. **Commonwealth v. Rink**, 574 A.2d 1078, 1082 (Pa. Super. 1990); **see also Commonwealth v. Dennis**, 460 A.2d 255, 258 (Pa. Super 1983) ("[E]vidence of [co-conspirator's] acquittal was offered generally, as proof of appellant's innocence, and thus was properly excluded as irrelevant."). In holding that evidence of a co-conspirator's acquittal is irrelevant to a defendant's guilt or innocence, we have noted that different

verdicts in co-conspirators' trials may "have been due to a variety of []
circumstances, including a difference in the proof offered at trial."  **Dennis**,
460 A.2d at 258 (citation omitted).

*

Here, Appellant cites **Meredith** for the proposition that evidence of a
co-defendant's acquittal is admissible for purposes other than "a mere bald
argument" that a defendant is not guilty because a co-defendant was
acquitted.  Appellant's Br. at 34-35. (citing **Meredith**, 425 A.2d at 338).
Appellant argues that although the trial court "characteriz[ed] its decision as
banning reference to co-defendant Stevens's [*sic*] acquittal[,]" the court
actually banned all references to Mr. Stevenson, which "curtailed Appellant's
right to confront and cross-examine witnesses."  **Id.** at 36.

In addressing this challenge, the trial court observed that Mr.
Stevenson's acquittal had no relevance to Appellant's guilt and that any
reference to his acquittal would have allowed the jury to impermissibly infer
that Appellant was not guilty because Mr. Stevenson was acquitted.  Trial Ct.
Op. at 40-41.

Appellant's argument fails to convince this Court that the trial court
abused its discretion when it precluded any reference to Mr. Stevenson.  First,
**Meredith** is distinguishable.  Here, Mr. Stevenson did not testify, and
Appellant sought to use Mr. Stevenson's acquittal for more than the limited
rehabilitation purpose permitted in **Meredith**.  Accordingly, **Meredith**
provides no support for Appellant's argument.

In addition, Mr. Stevenson's acquittal does not indicate a specific finding that the first jury rejected Detective Mitchell's testimony that Mr. Stevenson's and Appellant's phones were together around the time of the homicide. Mr. Stevenson's acquittal is likewise irrelevant to the credibility of Detective Mitchell's testimony at the retrial about the location of Appellant's cell phone. Therefore, the trial court did not abuse its discretion in precluding Appellant from impeaching Detective Mitchell with reference to the previous trial and Mr. Stevenson's acquittal. This claim merits no relief.

**G.**

In his final issue, Appellant argues that the court erred in admitting Detective Wood's testimony that Appellant did not engage in any drug-related communications on social media in the month after the homicide. Appellant's Br. at 36. He contends this evidence was impermissible pursuant to Pa.R.E. 404(b) as evidence of prior bad acts. *Id*.

It is axiomatic that "[o]nly relevant evidence is admissible at trial." ***Commonwealth v. Christine***, 125 A.3d 394, 398 (Pa. 2015) (citing Pa.R.E. 402). Evidence is relevant if it tends to make a material fact more or less probable than it would be without the evidence. Pa.R.E. 401. However, even if evidence is relevant, it may be excluded "if its probative value is outweighed by ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

In addition, Pennsylvania Rule of Evidence 404(b) prohibits evidence of a defendant's prior bad acts "to prove a person's character" or demonstrate

"that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, the Rule also provides that prior bad acts evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* at 404(b)(2).

\*

Appellant claims that the court abused its discretion when it permitted Detective Wood to testify that Appellant did not engage in drug-related communications on social media in the month after the homicide. Appellant's Br. at 37. Specifically, he argues that the testimony was irrelevant to motive, which was the Commonwealth's "proffered use" for evidence about his prior drug use and was not probative of whether he committed the homicide. *Id.* at 36-37.[6]

In its opinion, the trial court determined that evidence of Appellant's drug use prior to the homicide was relevant to establish motive: it

_____

[6] Appellant also argues for the first time that this evidence was more prejudicial than probative, was speculative, and was improper given the "imprimatur of expertise" by Detective Wood's testimony. Appellant's Br. at 37-39. However, Appellant failed to raise any of these claims when objecting to the admission of this evidence at the hearing on the motion in *limine* and instead, only challenged relevance. As noted above, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). This requirement bars an appellant from raising "a new and different theory of relief" for the first time on appeal. *Commonwealth v. York*, 465 A.2d 1028, 1032 (Pa. Super. 1983). Accordingly, these arguments are waived.

demonstrated that Appellant knew that Victim possessed drugs and money, and "indicated a potential addiction[,] which would supply motivation for [Appellant] to acquire these pills by force[.]" Trial Ct. Op. at 43. The court concluded that "evidence of drug use and purchases from [Victim] contributed to the complete story of the case[.]" *Id.*

Although the trial court only addressed the admissibility of evidence of Appellant's drug use through the date of the murder, we discern no abuse of discretion in its decision to permit Detective Wood to testify that Appellant did not engage in any drug-related conversations in the month after the homicide. This evidence was relevant to Appellant's motive to commit the crimes and supports the Commonwealth's theory that Appellant committed the crimes to obtain drugs that he could use or sell in the future so he would not have to seek them elsewhere. Moreover, the court only permitted the Commonwealth to ask one yes-or-no question to elicit this testimony from Detective Wood. N.T. Pretrial Conference, 8/29/22, at 23. The trial court's decision to allow this testimony was not manifestly unreasonable, or otherwise an abuse of discretion. This claim merits no relief.

**H.**

We conclude that all issues Appellant raises either lack merit or are waived. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  12/18/2024